**David Lee MITCHELL,**
**Plaintiff-Appellee,**

v.

**Larry KEITH, David Lucas, Charles Beasley, William Harden, and General Motors Corporation, Defendants-Appellants.**

**Nos. 83–5526, 83–5856.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1984.

Decided Jan. 21, 1985.

Gary B. Fleischman, Beverly Hills, Cal., for plaintiff-appellee.

Richard D. DeLuce, Lawler, Felix & Hall, Los Angeles, Cal., for defendants-appellants.

Before FARRIS, and ALARCON, Circuit Judges, and PRICE *, District Judge.

---

* Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

ALARCON, Circuit Judge:

This case presents issues of an employer's liability under 42 U.S.C. § 1981 for the discriminatory animus of a management-level employee.

## I

David Lee Mitchell (Mitchell), a black, began working for General Motors Corporation in 1968 at its South Gate, California, plant. From December, 1971, to 1973, Mitchell worked in the personnel department as the plant's first Equal Employment Opportunity (EEO) Coordinator. As EEO Coordinator, Mitchell made substantial changes at the plant in favor of minority employees, including upgrading their pay schedules. There was testimony that these activities caused resentment on the part of some Caucasian employees. In particular, Mitchell was involved in confrontations with Charles Beasley (Beasley), a supervisor, whose derogatory racial comments about certain minority employees were reported by Mitchell to Mr. Pig, the Personnel Director.

In 1974, Mitchell was transferred to the trim department as a supervisor. Mitchell first worked under a general supervisor named Gary Anderson and later under John Sullivan. Beasley was a general supervisor in another part of the trim department. Mitchell testified that he was constantly harrassed by Beasley, who monitored his comings and goings, did not pass on telephone messages, and made derogatory racial comments about Mitchell, other minority employees, and Mitchell's wife.

On February 25, 1977, most of the South Gate plant was on temporary layoff, while the plant was being readied for a model change. Beasley was acting as the shift superintendent; he was thus on that day in a direct line of supervision over Mitchell (Beasley to Sullivan to Mitchell). Mitchell was supervising three hourly employees,

who had been called in to work. These employees quickly finished their work. Under the terms of their collective bargaining agreement, they would have received 95 percent of their pay had they stayed home on layoff. They asked to be allowed to leave early. Mitchell testified that Beasley told him to let his three employees leave and to sign their time cards for the full shift. Mitchell did this and then left early himself.

Beasley reported to his superiors that Mitchell had falsified the time cards of these employees by giving them credit for a full shift. An investigation followed, during which Beasley recommended Mitchell's discharge. The Human Resources Management Committee decided to discharge Mitchell.

Mitchell brought an action under 42 U.S.C. § 1981 against General Motors and four of its management-level employees, including Beasley, claiming that he was discharged in retaliation for his EEO activities on behalf of minority employees. The jury returned a verdict awarding Mitchell $20,000 in compensatory damages against all defendants, $30,000 in back pay against General Motors, and $500,000 in punitive damages against General Motors (Mitchell had waived punitives against the individuals). The judgment was entered on October 29, 1982. On December 9, 1982, the court filed an order denying the defendants' motion for a new trial, on the condition that Mitchell file a remittitur of the punitive damages by December 20. Mitchell filed his acceptance of remittitur on December 10. Thus, by Mitchell's timely filing of remittitur, the motion for new trial was denied. Subsequently, the court awarded Mitchell's counsel $25,000 in attorney's fees. General Motors and the four individual defendants appeal the judgment and the award of attorney's fees.

## II

We note at the outset of our analysis that appellants do not contend that the evidence was insufficient as a matter of law to support judgment in favor of Mitchell. Instead, appellants contend that the trial court's refusal to give certain proposed instructions compels reversal. At oral argument, during a discussion of punitive damages, appellants' counsel was asked whether he "concede[d] that the verdict as to the compensatory damages was correct." Counsel stated: "No, Your Honor, I don't believe so in view of the fact we didn't get some jury instructions I think we should have gotten. Not that there isn't some evidence to support the compensatory damages—that's another question—but we're talking about jury instructions we didn't receive."

■ We have concluded that the district judge correctly refused these instructions, because they did not fully set forth the law and were therefore inaccurate. There is no error in a refusal to give incorrect or misleading instructions. *See Washington State Bowling Proprietors Ass'n v. Pacific Lanes, Inc.*, 356 F.2d 371, 376 (9th Cir. 1966); *see also Guerini Stone Co. v. P.J. Carlin Construction Co.*, 240 U.S. 264, 283, 36 S.Ct. 300, 308, 60 L.Ed. 636 (1916); *Cherry v. Stedman*, 259 F.2d 774, 777–78 (8th Cir.1958).

### A

Appellants contend that the trial court erred in refusing to give the following instruction (Defendants' Proposed Jury Instruction No. 44):

> If you find that the Human Resources Management Committee at the South Gate plant had an honest belief, even if mistaken, that plaintiff signed the time cards of his hourly employees for a full shift but had sent them home early without authorization, and acted on that belief in discharging plaintiff, then you must find for the defendants.

■ This instruction as submitted was misleading and inaccurate in that it failed to instruct the jury that an employer may be liable for a violation of § 1981 under the doctrine of respondeat superior. It is the law of this circuit that an employer who acted in good faith in firing an employee

may be liable "where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions ...." *Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979) (Employer-bank may be held liable under Title VII and § 1981 for employee-supervisor's discrimination). Here, the actions complained of were those of Beasley, who, according to testimony presented at trial, took advantage of a temporary position as Mitchell's direct supervisor in order to have Mitchell discharged. Beasley himself could not discharge Mitchell, but he could and did recommend Mitchell's discharge to the Human Resources Management Committee, which had the authorization to discipline and discharge employees. Thus, General Motors, through its committee, could be liable for Beasley's wrongful actions by (1) ratification, (2) authorization, or (3) respondeat superior. As the proposed instruction failed to inform the jury concerning respondeat superior, it was incorrect and should not have been given. The trial judge correctly refused the proposed instruction.

### B

Appellant General Motors contends that the trial court erred in refusing to give the following instruction (Defendant's Proposed Jury Instruction No. 37B):

> In this case plaintiff claims he should recover punitive damages against defendant General Motors, as well as against the individual defendants. Punitive damages, however, may be awarded against General Motors only if you find (1) that Beasley and Sullivan falsely accused plaintiff of falsifying time cards of hourly employees and (2) that the Human Resources Management Committee at

the plant knew that plaintiff was falsely accused but nevertheless discharged him.

■■■ To the extent that this proposed instruction informed the jury that punitive damages could be imposed on General Motors for the ratification or authorization of Beasley's acts, these theories of liability were covered by another instruction, also offered by the defendants, which the judge did give.[1] There is no error in refusing to use any particular language offered by a party, and there is no obligation to give repetitious instructions. *Temblador v. Hamburg-American Lines,* 368 F.2d 365, 367 (9th Cir.1966). The judge did not err in refusing to give this instruction to the jury because other instructions which were given covered the same matter.

■■■ Furthermore, the defendant's proposed instruction is misleading because it omits relevant principles of the law applicable to this case. In addition to liability arising from ratification and authorization, punitive damages also may be imposed, in the absence of proof of fault on the part of the corporation, where the wrongful actor is a managerial employee.

This court recognized the availability of punitive damages under § 1981 in *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 928 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). *See also Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 883 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). A number of courts have awarded punitive damages in section 1981 vicarious liability cases. *See, e.g., EEOC v. Gaddis,* 733 F.2d 1373, 1380 (10th Cir.1984) (en banc), *citing Miller v. Bank of America,* 600 F.2d 211, 213 (9th Cir.1979) (An employee is liable

---

1. The judge instructed the jury as follows:

In this case plaintiff claims that he should recover punitive damages against defendant General Motors. Punitive damages, however, may be awarded against General Motors for the acts of its agents or employees only if General Motors authorized or ratified the conduct which is found to be the basis for puni-

tive damages with knowledge of its malicious, oppressive or willful nature. In addition, any such ratification or authorization by the corporation must have been by an agent or employee acting in a managerial capacity. Ratification means approval of an act after it is done.

under both Title VII and section 1981 where the racially discriminatory act complained of "was that of a supervisor, authorized to hire, fire, discipline, or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy."); *Jones v. Local 520*, 524 F.Supp. 487, 494 (S.D.Ill.1981). *See also Padway v. Palches*, 665 F.2d 965, 967 (9th Cir.1982) (holding that the school district would be liable, or the theory of respondeat superior, for the actions of an employee who is authorized to recommend hiring or firing). Nevertheless, no federal court has specifically or extensively addressed the standard for the availability of punitive damages where an employer's liability for compensatory damages is predicated on the doctrine of respondeat superior.

 The issue of what damages may be awarded in a section 1981 action must generally be determined from federal law rather than specific state statute. *See, e.g., T & S Service Associates, Inc. v. Crenson*, 666 F.2d 722 (1st Cir.1981). Where federal laws "are deficient in the provisions necessary to furnish suitable remedies, courts must look to the law of the state wherein sits the court having jurisdiction of the matter." 42 U.S.C. § 1988; *Basista v. Weir*, 340 F.2d 74, 85–87 (3d Cir.1965).[2] In this case, we must look to the law of California.

 Under California law, an employer may be made to pay punitive damages based upon the acts of an employee, where the employer (1) authorized the acts, (2) ratified the acts, (3) knowingly or recklessly employed an unfit employee, or (4) employed the person, who did the wrongful

acts in the scope of employment, in a managerial capacity. Cal.Civ.Code § 3294(b) (West Supp.1984); *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 822, 169 Cal.Rptr. 691, 620 P.2d 141 (1979) (bad faith breach of insurance contract), *appeal dismissed*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980); *Grimshaw v. Ford Motor Co.*, 119 Cal.App.3d 757, 813, 174 Cal. Rptr. 348 (1981) (conscious disregard of Pinto design defect). In the first three situations, punitive damages are imposed on the employer because of the employer's own reprehensible conduct. In the fourth situation, punitive damages are imposed on the employer because of managerial employee's reprehensible conduct. Imposing punitive damages on the employer serves to deter the employment of unfit persons for important positions. Restatement (Second) of Torts § 909 comment b (1977).

 Thus, punitive damages might have been imposed on General Motors not only if the corporation ratified or authorized Beasley's acts, but also if Beasley acted in a managerial capacity. Whether an employee acts in a managerial capacity depends upon "the degree of discretion the employee[ ] possess[es] in making decisions that will ultimately determine corporate policy." *Egan*, 24 Cal.3d at 822–23, 169 Cal.Rptr. 691, 620 P.2d 141. The court gave an instruction on "managerial capacity," offered by the defendants, which adequately stated this rule: "An agent or employee acts in a managerial capacity whenever a degree of discretion permitted the agent or employee in making decisions is such that the agent or employee's decisions will ultimately determine the corporation's business policy." Thus, if the jury found

---

**2.** 42 U.S.C. § 1988 provides in pertinent part: The jurisdiction in civil and criminal matters conferred on the district courts by the provisions ... of Title "CIVIL RIGHTS" [§§ 1977–91] ... for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or

are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause ....

Beasley to be a managerial employee,[3] the jury could have imposed punitive damages on General Motors, even if General Motors did not know the reprehensible nature of Beasley's acts. As the defendant's offered instruction did not include this alternative basis for liability, it was inaccurate. The trial judge correctly refused the instruction.

### C

The appellants contend that the trial court erred in refusing to give their proposed instruction 27A or 27B, each of which stated in pertinent part that Mitchell needed to show that he would not have been discharged "but for" his assistance to other employees in opposing a racially discriminatory practice. Instead, the court instructed the jury that Mitchell's opposition to a racially discriminatory practice must have been "a substantial and determinative cause for his discharge."

In the age discrimination context, in which the plaintiff must show that age was a determining factor in the employee's discharge, we have stated that either the "determining factor" or the "but for" language is appropriate. The plaintiff is not required to show that age was the sole factor. *Kelly v. American Standard, Inc.*, 640 F.2d 974, 984 (9th Cir.1981).

■ Similarly, in the racial discrimination context, the plaintiff does not have to show that discrimination was the sole cause for discharge. It is sufficient to show that the discrimination made a difference between retention and discharge. Either the "determining factor" or the "but for" language is sufficient to convey this burden.

■ Here, the judge's use of "determinative cause for his discharge" was adequate to convey Mitchell's burden of proof. As the instruction given by the judge adequately stated the law, there is no error in refusing to use the particular language re-

quested by a party. *See Temblador*, 368 F.2d at 367; *Fleming v. Michigan Mutual Liability Co.*, 363 F.2d 186, 189 (5th Cir. 1966). The use of the word "substantial" was unnecessary, but the defendants cannot show that they were prejudiced by its use.

We note also that defendants' proposed instructions 27A and 27B were incorrect, because they excluded the possibility of respondeat superior liability, as discussed in part A above. The judge did not err in refusing these instructions.

### D

■ The appellants contend that the trial court erred in refusing to give an instruction that discriminatory comments alone are not sufficient to support a verdict for Mitchell. The defendants' proposed jury instruction no. 45 stated:

An employer is not an absolute guarantor of a perfect work environment free from all frictions, even including those with racial overtones. Thus, sporadic disagreements, altercations, conflicts and irritations caused by co-workers, even if they concern racial matters, and even if believed, cannot, standing alone, be enough to find for plaintiff.

In another instruction given by the judge, the jury was properly informed concerning the plaintiff's burden of proof. As the plaintiff's burden of proof was adequately covered, the judge did not abuse his discretion in deciding that this instruction was unnecessary and argumentative in nature. *Temblador*, 368 F.2d at 367; *Fleming*, 363 F.2d at 189.

### E

The appellants offered an instruction (Defendants' Proposed Jury Instruction No. 30) which stated: "Under the law, defendants could discharge plaintiff from his employment at any time if, in their opinion,

---

**3.** There may be some question whether the evidence is sufficient to support the finding that Beasley acted in a managerial capacity. The defendants did not appeal on the ground of sufficiency of the evidence. As there was no briefing on this issue, we decline to raise it *sua sponte*. *Sample v. Schweiker*, 694 F.2d 639, 640 n. 1 (9th Cir.1982); *Nuelsen v. Sorensen*, 293 F.2d 454, 462 (9th Cir.1961).

he was not a suitable employee. The mere fact of discharge does not establish plaintiff's claim, even though you may feel that the discharge was unwarranted or unreasonable." The trial court deleted the final phrase, "even though you may feel the discharge was unwarranted or unreasonable." The appellants contend that this was error.

■ A trial court is not required to use the precise language offered by a party. The judge did not abuse his discretion in deciding that the deleted language was argumentative in nature and unnecessary to convey the import of the instruction. *Temblador*, 368 F.2d at 367; *Fleming*, 363 F.2d at 189.

### III

■ The trial court refused to allow evidence of Mitchell's failure to file a discrimination charge with either federal or state fair employment agencies. Decisions of the trial court on the admissibility of evidence are reviewed for abuse of discretion. *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983). Rule 403 of the Federal Rules of Evidence states the test for the exclusion of evidence:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentations of cumulative evidence.

■ The appellants claim that they should have been allowed to introduce this evidence in order to attack Mitchell's credibility. They say it is not credible that one who had served as EEO Coordinator would not file a discrimination claim. We assume that this testimony would be probative of Mitchell's credibility. On the other hand, there is no requirement that a plaintiff file a discrimination claim in order to bring suit under § 1981. *Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980). This evidence might well have con-

fused the issues, misled the jury, and wasted time by forcing the plaintiff to put in evidence showing why he decided to pursue one remedy rather than another. We cannot say that the trial judge abused his discretion in refusing to admit this testimony.

### IV

■ The appellants contend that the court should not have granted the motion for attorney's fees. We review an award of attorney's fees for abuse of discretion. *Metcalf v. Borba*, 681 F.2d 1183, 1188 (9th Cir.1982).

Mitchell's original complaint stated that he would seek attorney's fees should he prevail. After entering judgment on the jury verdict in favor of Mitchell, the trial court granted General Motor's motion for new trial, unless Mitchell would accept a remittitur. Mitchell accepted the remittitur on December 10, 1982, but he also asked the court to reconsider the remittitur order. The court denied Mitchell's motion on January 10, 1983. During the period between January 10 and March 2, the attorneys negotiated the fee issue out of court. Mitchell filed for fees on March 2, 1983.

■ The appellants contend that Mitchell unreasonably delayed filing the motion for attorney's fees. Concerns of delay center upon "the need to prevent fragmented appellate review and unfair postjudgment surprise to non-prevailing defendants." *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 452, 102 S.Ct. 1162, 1167, 71 L.Ed.2d 325 (1982). The purpose of these concerns is to promote finality, judicial economy, and fairness. *See id.* The appellants argue that the delay in filing for fees created a "serious danger" of fragmented review. In fact, the parties were able to brief and argue the merits of the judgment and the award of attorney's fees together. We have not had to review this matter piecemeal. The interests of judicial economy have been served. The appellants do not contend that they were unfairly surprised

or prejudiced by the delay, and the record shows no indication of surprise or prejudice. The district court did not abuse its discretion in awarding attorney's fees to Mitchell.

## V

As there was no error in the refusal of the proposed jury instructions and no abuse of discretion in the refusal of evidence and the award of attorney's fees, we AFFIRM.