Beverly JONES, plaintiff,

v.

**RENO HILTON RESORT CORPORATION and Bally's Grand, Inc., defendants.**

No. CV–N–94–143–ECR.

United States District Court,
D. Nevada.

June 23, 1995.

Terri Keyser–Cooper, Reno, NV, for plaintiff.

Scott M. Mahoney, Hilton Gaming Corp., Las Vegas, NV, for Reno Hilton.

Margo Piscevich, Reno, NV, for Bally's Grand.

## ORDER

EDWARD C. REED, Jr., District Judge.

The case is here on motions by each defendant for partial summary judgment. Beverly Jones, a black woman, began working as a porter at the Reno Hilton, which was then known as the MGM Grand, in March 1983. In 1990, the MGM Grand was sold to Bally's, and in July 1992 it was sold again, this time to the Hilton.

Briefly, and omitting many details, Jones's story is this: she was discriminated against beginning in November 1990, when her supervisor made an unprovoked series of racist remarks. She complained to management and, not satisfied with the response, filed a complaint with the Nevada Equal Rights Commission (NERC) in January 1991. Shortly thereafter, she claims, she agreed to withdraw the complaint in return for a promotion. However, in June 1991, only three months after she was promoted, Jones was demoted. She claims the demotion was prompted by complaints from white workers to management that they would not work for a black, that she was thereafter on a "hit list" of employees management wished to get rid of, and that she was subjected to various forms of harassment and given harsher job assignments than non-black employees in the same positions. In November 1991, Jones filed another NERC complaint.

On July 31, 1992, Bally's sold the hotel/casino complex to the Reno Hilton, and Jones became a Hilton employee. Apparently there was no significant change in personnel as a result of the sale, and Jones claims that the harassment continued. On September 6, 1992, she was fired: according to the Hilton, because she read a confidential letter on an executive's desk; according to Jones, because she had filed two NERC complaints and the Hilton saw her as a troublemaker.

Jones complains that she was (1) fired because of her race, (2) harassed and discriminated against on the job because of her race, (3) fired in retaliation for her NERC complaints, (4) that the company discriminates against its black employees as a group, (5) that her contractual relation with her employer was impaired because of her race, (6) that she suffered the intentional infliction of emotional distress, (7) that she was wrongfully terminated, in violation of public policy, and (8) that punitive damages are appropriate. The first four claims arise under Title VII; the fifth under 42 U.S.C. § 1981; and the sixth and seventh under Nevada law. The "claim" for punitive damages is really an allegation that such damages are recoverable in connection with the Title VII and § 1981 claims.

## I. *Bally's and the Hilton's motions for summary judgment*

Bally's has moved (Doc. # 25) for summary judgment, as has the Hilton (Doc. # 23). Jones has opposed each motion (Docs. # 35 and # 33) and Bally's has replied (Doc. # 38), as has the Hilton (Doc. # 41). Bally's seeks summary judgment on Jones's first, third, fourth, sixth, seventh and eighth claims for relief; Jones, in her opposition, has withdrawn the first, third, fourth and seventh claims against Bally's. This leaves at issue between Jones and Bally's the claims for

emotional distress and punitive damages. The Hilton seeks summary judgment on Jones's third, sixth, seventh and eighth claims for relief; Jones, in her opposition has withdrawn the third and seventh claims against the Hilton. This leaves at issue between Jones and the Hilton, too, the claims for emotional distress and punitive damages.

With respect to the claim for punitive damages, it suffices to note that, while such damages do not constitute a "claim for relief," Jones seeks them in connection with, among others, her second (Title VII disparate treatment) and fifth (§ 1981 impairment of contract) claims for relief. Neither Bally's

nor the Hilton moved for summary judgment on those claims.

Punitive damages are available under § 1981, *Johnson v. Railway Express Agency*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 928 (9th Cir.1982), and can be awarded against an employer based on a respondeat superior theory. *Mitchell v. Keith*, 752 F.2d 385, 389–90 (9th Cir.1985). Also, we think that § 1981, unlike Title VII and Nevada statutory law, places no limit on punitive damage recovery.[1] Punitive damages are available

1. Bally's suggests that any recovery of punitive damages under § 1981 would be determined by reference to Nevada law, which limits punitive damage awards to $300,000 or three times the amount of any compensatory damage award, whichever is greater. N.R.S. § 42.005(1) (Supp. 1993).

We are not so sure. Damages under § 1981 are awarded pursuant to 42 U.S.C. § 1988. *Woods v. Graphic Communications*, 925 F.2d 1195, 1204 (9th Cir.1991). Section 1988 provides, in relevant part, that civil rights are to be enforced

in conformity with the laws of the United States, in so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction ... is held, ... shall be extended to and govern the said courts....

42 U.S.C. § 1988(a). In short, application of § 1988 requires a three-step inquiry: first, the court looks to federal law for a suitable remedy; if there is no suitable federal rule, the court looks to the law of the forum state; and the federal court applies the latter so long as it is constitutional and consistent with federal law. *Burnett v. Grattan*, 468 U.S. 42, 46–48, 104 S.Ct. 2924, 2927–28, 82 L.Ed.2d 36 (1984).

In *Mitchell v. Keith*, 752 F.2d 385, 390 (9th Cir.1985), the Ninth Circuit noted this framework and then summarily stated that "we must look to the law of California," the forum state, to determine whether punitive damages could be awarded. Bally's, citing *Mitchell*, claims that, analogously, Nevada's punitive damages statute would apply here to any award of punitive damages under § 1981.

Again, we have our doubts. *Mitchell* did not explain what deficiency in the federal law of punitive damages required the application of state law. In *Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983), the

Court made it clear that punitive damages can be awarded where the defendant acts with "evil motive or intent" *or* with "callous or reckless disregard for the federally protected rights of others." *Smith v. Wade* was a § 1983 case, but has been cited by the Ninth Circuit as setting the federal standard for an award of punitive damages in § 1981 suits as well, *Woods*, 925 F.2d at 1206; *see also Stender v. Lucky Stores, Inc.*, 803 F.Supp. 259, 324 (S.D.Cal.1992), and properly so, since § 1981 and § 1983 are "companion statutes," *Moffett v. Gene B. Glick Co.*, 621 F.Supp. 244, 287 (S.D.Ind.1985), concerned with the vindication of federal civil rights. *See Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1296 (7th Cir.1987) (*Smith v. Wade* was "a case decided under § 1983, but equally applicable to § 1981"); *see also Jackson v. Pool Mortgage Co.*, 868 F.2d 1178, 1181 (10th Cir.1989) (error, though harmless in the instant case, to apply state punitive damages law in deciding whether to vacate a punitive damages award under § 1981, because "*federal* standards govern the determination of punitive damages under federal civil rights statutes"). In other words, it is unclear why the *Mitchell* court thought it necessary to apply California's general law of punitive damages in a § 1981 case, when a suitable standard could have been borrowed from the closely analogous federal § 1983 jurisprudence.

Indeed, the circuit took precisely the latter course in *Woods*, 925 F.2d at 1206, a § 1981 case in which the court cited *Smith v. Wade* as establishing the proper standard for an award of punitive damages, without so much as mentioning the law of the forum state, Washington. *Woods* and *Mitchell* thus seem in conflict on this issue. Because *Woods* is the more recent decision, and, we think, adopts the clearly correct approach, we believe we are free to depart from any suggestion implicit in *Mitchell* that state law must determine whether, and in what amount, punitive damages are to be awarded in a § 1981 case. And we choose not to apply state law because Supreme Court precedent sets out a standard for the award of such damages in § 1983 cases, which are closely related to § 1981 cases.

under Title VII, too, though, as noted, they are limited.[2] 42 U.S.C. § 1981a(a)(1). Therefore, while summary judgment will be granted to Bally's and the Hilton on Jones's claim for punitive damages, Jones may seek such damages in connection with her remaining Title VII and § 1981 claims against each defendant, to the extent each statute allows such damages.

 The parties argue vigorously over the propriety of Jones's claim for intentional infliction of emotional distress. This is a common law claim. The elements, which follow the Restatement, are set out in *Star v.*

*Rabello,* 97 Nev. 124, 625 P.2d 90 (1981).[3] Answering the Ninth Circuit's suggestion in *Brooks v. Hilton Casinos, Inc.,* 959 F.2d 757, 766 (9th Cir.1992), the Nevada Supreme Court has recently made clear that the tort is cognizable in the employment termination context. *Shoen v. Amerco, Inc.,* 111 Nev. 735, ——–——, 896 P.2d 469, 474–75 (1995).[4] The problem with Jones's emotional distress claim is simpler: she has submitted no admissible evidence to support it. What we have, instead, is an opposition brief detailing events which, *if supported by admissible evidence,* might state a claim for emotional distress. But Jones has submitted only a

This has important implications for Jones and Bally's. For one thing, the mental state required for an award of punitive damages is different: Nevada law requires a showing of "oppression, fraud or malice," N.R.S. § 42.005, while a lesser showing (of "reckless or callous indifference to the federally protected rights of others") will do under § 1981, if *Smith* supplies the standard. Perhaps more important, the Nevada statute, as described above, caps punitive damage awards, while punitive damages are unlimited under § 1981. *Stender,* 803 F.Supp. at 324.

(We note that, as explained later, Title VII, as amended in 1991, limits a plaintiff's combined compensatory and punitive damage recovery, depending on the size of the employer. In this case, Jones's combined recovery of compensatory and punitive damages would be limited to $300,000. This limitation on Title VII damages, however, does not limit in any way a plaintiff's recovery under § 1981. *See* 42 U.S.C. § 1981a(b)(4).)

2. There are several limitations:

(1) under the Supreme Court's *Landgraf v. USI Film Products* decision, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Civil Rights Act of 1991, which first made punitive damages available in Title VII suits, is not retroactive, and the actions giving rise to liability therefore must have occurred after November 21, 1991, the effective date of the 1991 Act; Bally's may, of course, be liable under Title VII for events that occurred before that date, but punitive damages would not attach to that liability;

(2) if the plaintiff can recover under § 1981, then punitive (and compensatory) damages are not recoverable under Title VII at all, *see* 42 U.S.C. § 1981a(a)(1); and

(3) there is a statutory cap, which varies with size of the employer and in this case (given the number of employees at the hotel and casino) would be $300,000, on the combined punitive and compensatory damages recoverable by a Title VII plaintiff (although this cap does not limit

recovery under § 1981). *See* 42 U.S.C. §§ 1981a(b)(3)(D), (b)(4).

3. "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star,* 625 P.2d at 91–92.

4. We note that a claim for tortious discharge in violation of public policy (e.g., a claim by an "at-will" employee that she was fired because of her age or race) is barred by the existence of a "comprehensive statutory remedy." The Nevada Supreme Court considers the remedies (e.g., back pay, reinstatement, liquidated damages equal to the back pay) provided by the federal Age Discrimination in Employment Act (ADEA) and some state statutes (e.g., N.R.S. §§ 50.070, 613.310) to be sufficiently "comprehensive" to bar a tortious discharge claim. It would therefore certainly consider the broader remedies available under § 1981 and, after 1991, Title VII, to be comprehensive enough to bar such a claim. (Note that this has nothing to do with federal preemption. The question is not whether the existence of a comprehensive federal statutory remedy bars the plaintiff from bringing a pendent common law claim for the same injury—it does not—but, rather, whether *Nevada* law allows a common law claim to be brought when a "comprehensive statutory remedy," state or federal, exists.)

One might expect, then, that where recovery may be had under a statute, whether § 1981 or (after 1991) Title VII, for emotional distress, a common law claim for intentional infliction of emotional distress arising out of the termination would be barred by the existence of the statutory remedy, just as a tortious discharge claim is barred. *Shoen,* however, makes clear that this is not so: a fired employee can bring a claim for emotional distress arising from the termination, even though a claim for tortious discharge arising from the very same incident is barred by the existence of a statutory remedy.

declaration, stating, in essence, that everything stated in her opposition brief is accurate. That will not do. Rule 56(e) requires that an opposition to a motion for summary judgment must be supported by affidavits, depositions and the like, stating specific facts sufficient to bar entry of summary judgment.

There has, finally, been some argument over the doctrine of "successor liability," but, having read the briefs, it seems to us that there is no real conflict between the parties on this issue. Bally's agrees that its liability, if any, relates to events occurring prior to July 31, 1992 (the date the hotel and casino complex was sold to the Hilton), and the Hilton accepts liability, assuming there is any, for events occurring after that date.

**IT IS THEREFORE HEREBY ORDERED** that Bally's **motion (Doc. # 25)** for **partial summary judgment** is **GRANTED IN PART.** Jones's claims for unlawful discharge, company-wide discrimination, retaliation, and discharge in violation of "public policy," having been withdrawn, are deemed moot and no further court action is required with respect to them. Jones may proceed against Bally's on her Title VII claim for racially based harassment and discrimination on the job and on her § 1981 claim for racially based impairment of her contractual rights. (We note, again, that Jones's remedies under Title VII will vary, depending upon whether the conduct complained of occurred before or after the effective date of the Civil Rights Act of 1991, and that Jones has no § 1981 claim at all for conduct occurring before that date, when the Supreme Court's *Patterson* decision was in effect.) Bally's motion for summary judgment is granted as to Jones's claims for intentional infliction of emotional distress and punitive damages (although Jones may seek punitive damages in connection with her remaining Title VII and § 1981 claims, to the extent allowed under those statutes).

**IT IS FURTHER ORDERED** that the Hilton's **motion (Doc. # 23)** for **partial summary judgment** is **GRANTED IN PART.** Jones's claims for company-wide discrimination and discharge in violation of "public policy," having been withdrawn, are deemed moot and no further court action is required with respect to them. Jones may proceed against the Hilton on her Title VII claims for racially based discharge, racially based harassment and discrimination on the job, and retaliatory discharge, and on her § 1981 claim for racially based impairment of her contractual rights. The Hilton's motion for summary judgment is granted as to Jones's claims for intentional infliction of emotional distress and punitive damages (although Jones may seek punitive damages in connection with her remaining Title VII and § 1981 claims, to the extent allowed under those statutes).