**Erika FAIL, Plaintiff–Appellee and Cross–Appellant,**

v.

**COMMUNITY HOSPITAL, Defendant–Appellant and Cross–Appellee.**

No. 96CA0004.

Colorado Court of Appeals, Div. V.

April 10, 1997.

Rehearing Denied June 19, 1997.

Certiorari Granted Nov. 24, 1997.

Keith Killian & Associates, P.C., J. Keith Killian, James P. Guthro, Kay Snider Coffman, Connie K. Ward, Grand Junction, for Plaintiff–Appellee and Cross–Appellant.

Elder & Phillips, P.C., Mark R. Luff, Keith Boughton, Grand Junction, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge ROY.

Defendant, Community Hospital (hospital), appeals the judgment entered on a jury verdict awarding damages to plaintiff, Erika Fail, on her claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. (1994). Plaintiff cross-appeals the court's order regarding prejudgment interest and attorney fees. We affirm.

The hospital employed plaintiff for almost nine years, during which time plaintiff worked in a variety of positions, including dietary aide, emergency room clerk, and rehabilitation aide. While in her last position, plaintiff developed a hernia and injured her right knee, both of which required surgery and lost time from work.

Plaintiff's knee injury permanently limited her ability to walk and bear weight on her right leg, which restricted her ability to perform all of the necessary duties of a rehabilitation aide. Recognizing her own limitations, plaintiff requested a transfer to a vacant position in medical records for which she was qualified, which she could perform without accommodation, and which carried the same pay grade as her present position.

Plaintiff interviewed for the medical records position on December 8, 1992, at which time she was being paid at the rate of $8.46 an hour. Plaintiff discontinued the interview when she learned that the salary would be $6.25 an hour and it would take 9½ years to reach her current pay category. The next day the interviewer stated to plaintiff that the pay would be $7.66 an hour and plaintiff indicated that would not be acceptable.

The hospital assigns a numerical salary grade to each position that corresponds to a salary range which is further subdivided into eight lettered "steps." An employee moves up the steps within a grade based on performance, experience, and seniority. The hospital had a policy that transferring employees were to be paid no higher than the sixth step of the pay grade assigned their new position. In the rehabilitation aide position, plaintiff was being paid at a rate above the sixth step.

At the time plaintiff was seeking the transfer to medical records, and unbeknownst to plaintiff, her supervisor had decided that she could no longer perform the essential functions of her present position because of her disabilities. The supervisor decided to terminate plaintiff and so advised her on December 10, 1992, at which time she gave the plaintiff her severance pay and plaintiff left the hospital. At the time plaintiff was terminated, there were three like-graded positions vacant for which plaintiff was qualified by training and experience and which she could perform without any accommodation, one of which was the medical records position.

Plaintiff was not offered any of the vacant positions at the time of, and following, her termination, nor was any other accommodation discussed with her. Plaintiff unsuccessfully requested reinstatement approximately 10 days later. Plaintiff filed a claim pursuant to the ADA, alleging she was disabled, that she had been terminated because of her disability, and that the hospital had failed to offer her a reasonable accommodation.

At trial, plaintiff testified for the first time that her knee problem might have resulted from a work-related injury but that she did not file a workers' compensation claim because she could not recall when and how the injury actually occurred.

The jury rendered a verdict in plaintiff's favor, awarding $17,390 in back pay, $99,794 in front pay, and $100,000 in punitive damages. The court entered judgment on the jury verdict, and awarded prejudgment interest in the amount of $4,041.64, attorney fees in the amount of $50,803.30, and costs of $10,546.79, for a total judgment of $282,-575.63. This appeal and cross-appeal followed.

The hospital appears to argue in the alternative: (1) that it was not required to offer plaintiff a transfer to a position for which she was otherwise qualified at the same rate of pay she was presently receiving if she was not otherwise entitled to that rate of pay upon transfer under its transfer policy; and (2) that it did, in fact, offer plaintiff the medical records position at $7.66 an hour as an accommodation. Plaintiff testified that she was never offered the medical records position or any other accommodation by the hospital at the time of her termination. The jury found, in response to a special verdict interrogatory, that the hospital failed reasonably to accommodate the plaintiff with regard to her reassignment to another position.

## I.

■ The hospital first contends that the jury instructions failed to inform the jury as to plaintiff's burden to establish a *prima facie* case under the ADA, and impermissibly shifted the burden of proof to the hospital.

Under the circumstances of this case, we disagree.

To ascertain whether the law has been correctly stated, the instructions given the jury should be read as a whole. And, unless the instructions as given resulted in substantial prejudicial error, they cannot be grounds for reversal. *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo.1992).

Here, the trial court first gave a general instruction which stated:

(1) The burden of proof is on the Plaintiff to establish her case by a preponderance of the evidence.

(2) The burden of proof is on the Defendant to establish any affirmative defense by a preponderance of the evidence.

The court then gave a specific instruction regarding the requirements of the ADA:

The Americans with Disabilities Act does not prohibit an employer from taking an individual's disability into account when it makes an employment decision. However, when an employer relies on the individual's disability in making an employment decision, the employer has the burden of proving that the disability was properly considered.

In a case like this, where the defendant admits that the Plaintiff's disability was, at least in part, a factor in its decision, the Defendant has the burden of proving, by a preponderance of the evidence that defendant reasonably accommodated Plaintiff's disability in regard to reassignment to vacant positions for which she was qualified.

If you find that Defendant has proven this proposition, by a preponderance of the evidence, you must find for the Defendant.

If, on the other hand, the Defendant has not proven this proposition by a preponderance of the evidence, you must find for the Plaintiff if you also find that defendant's failure to accommodate Plaintiff's disability caused her damages.

The hospital argues that because this latter instruction failed to identify all of the elements of a *prima facie* case under the ADA, the determination as to whether plaintiff had met her burden was impermissibly

removed from jury consideration. We disagree.

■ A *prima facie* case under the ADA requires a plaintiff to establish: 1). that she was "disabled," *i.e.*, suffered from an impairment that substantially limited one or more of her major life activities; 2) that the hospital was subject to the ADA; 3) that she was qualified to perform the essential functions of the position held or sought with or without an accommodation; and 4) that she suffered an adverse employment decision. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876 (6th Cir.1996). In this instance, the elements of plaintiff's *prima facie* case were either expressly admitted or uncontroverted.

The hospital admitted plaintiff was disabled as defined by the ADA, and it did not dispute that it was subject to the ADA, having approximately 300 employees when 15 are required. *See* 42 U.S.C. § 12111(5)(A) (1994).

Both parties agreed that plaintiff was unable to perform the essential functions of her job as a rehabilitation aide solely because of her disability, that she was terminated because of her disability, and that plaintiff was qualified by experience and training to perform the duties of three positions which were vacant at the time of her termination.

Therefore, all of the elements of plaintiff's *prima facie* case were either agreed to or clearly not contested.

The burden-shifting mechanism in an ADA claim is identical with that outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170 (10th Cir.1996); *Price v. S–B Power Tool*, 75 F.3d 362 (8th Cir.1996).

■ Once an ADA plaintiff establishes a *prima facie* case, there exists a rebuttable presumption of discrimination. The employer can meet its burden with evidence of a legitimate nondiscriminatory reason for its actions. Once that burden is met, the plaintiff must show the employer's reason is pretextual. *McDonnell Douglas Corp. v. Green*, *supra*.

■ Therefore, plaintiff's *prima facie* case having been established, the burden shifted to the hospital to rebut the resulting presumption that it discriminated against plaintiff because of her disability. This burden can be satisfied by evidence that the hospital provided a reasonable accommodation to plaintiff including reassigning her to a vacant position for which she was qualified with equivalent status and pay. *See Interpretative Guidance on Title I of the Americans with Disabilities Act*, 29 C.F.R.App. § 1630.2(*o*) (1996).

The primary issue tried, therefore, was whether the hospital had adequately accommodated plaintiff. The issue was further narrowed, as a practical matter, to whether the hospital had offered plaintiff another position with equivalent status and pay as an accommodation. The jury was instructed that it could find for the hospital if it found that the hospital proved it had reasonably accommodated plaintiff's disability. In light of the circumstances of this case, the challenged instruction was a correct and adequate statement of the law. Therefore, the jury was correctly instructed with respect to the burden of proof.

### II.

■ The hospital next argues that the trial court erred in rejecting its proposed jury instructions pertaining to plaintiff's ability to recover and the hospital's obligations to accommodate a disabled employee under the ADA. Under the circumstances of this case, we disagree.

### A.

42 U.S.C. § 12112 (1994) outlines the general requirements of the ADA as follows:

(a) General Rule

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees....

(b) Construction

As used in subsection (a) of this section, the term 'discriminate' includes—

. . . .

(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

### 1.

The trial court rejected instructions tendered by the hospital which dealt with the requirement that plaintiff be not only disabled but a "qualified individual with a disability" in order to recover under the ADA. One of the rejected instructions stated:

> The ADA protects 'qualified individuals with disabilities' from employment discrimination. Under the ADA, an 'individual with a disability' is a person who has a physical or mental impairment that substantially limits one or more major life activities. The parties have stipulated that at the time of her termination, [plaintiff] had a physical impairment that substantially limited one or more major life activities. Thus, she is an 'individual with a disability' under the ADA. *However, to be protected by the ADA, a person must not only be an individual with a disability, but must be 'qualified.' A 'qualified individual with a disability' is a person with a disability who satisfies the requisite skill, experience, education and other job related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation can perform the essential functions of such position.* (emphasis added)

Another rejected instruction read:

> An employer does not have to make an accommodation for an individual who is not otherwise qualified for a position.

42 U.S.C. § 12111(8), the definitional section of the ADA, defines "qualified individual with a disability" as being:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . .

As pertinent here, and by this definition, the issue of whether plaintiff was a "qualified individual with a disability" was not disputed as the parties agreed that she was disabled and qualified by virtue of training and experience for the three positions vacant at the time she was terminated.

Therefore, we conclude that the trial court adequately instructed the jury on the hospital's obligations under the ADA and did not err in refusing the hospital's proposed instructions.

### 2.

■ The hospital also argues the trial court erred in refusing to give an instruction regarding reassignment as a "reasonable accommodation." We disagree.

The appendix to the ADA's implementing regulations contains an interpretation by the Equal Employment Opportunity Commission (EEOC) of the ADA with respect to employment opportunities, and discusses reassignment as follows:

> Reassignment to a vacant position is also listed as a potential reasonable accommodation. . . . Employers should reassign the individual to an *equivalent position* in terms of pay, status, etc. if the individual is qualified, and if the position is vacant within a reasonable amount of time. . . . An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation. An employer, however, is not required to maintain the reassigned individual with a disability at the salary of the higher graded position if it does not so maintain reassigned employees who are not disabled.

*Appendix to Part 1630—Interpretative Guidance on Title I of the Americans with Disabilities Act,* 29 C.F.R. § 1630.2(*o*) (1996) (emphasis added).

The hospital tendered and the court rejected the following instruction:

An employer may re-assign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no positions vacant or soon to be vacant for which the employee is qualified (with or without an accommodation). *A lower graded position may also include a lower salary within similarly graded positions if the individual is only qualified for the lower wage in the new position.* In such a situation, the employer does not have to maintain the individual's salary at the level of the higher graded position, unless it does so for other employees who are re-assigned to lower graded positions. (emphasis added)

The instruction differs from 29 C.F.R. § 1630.2(*o*) (1996) by the inclusion of the emphasized language. The instruction tendered by plaintiff and given by the court more accurately mirrors the language of § 1630.2(*o*):

An employer may re-assign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no positions vacant or soon to be vacant for which the employee is qualified (with or without an accommodation). In such a situation, *the employer does not have to maintain the individual's salary at the level of the higher graded position, unless it does so for other employees who are re-assigned to lower graded positions.* (emphasis added)

The instruction delivered by the court is a correct statement of the law and adequately advised the jury regarding the hospital's obligations with respect to reassignment under the ADA, including the issue of the rate of pay following reassignment. Therefore, it was not error to refuse the instruction tendered by the hospital.

### 3.

By means of the three rejected instructions discussed above, the hospital sought to advance its theory that, while plaintiff was qualified by training and experience to perform the duties of the other like-graded positions available at the time of her discharge without further accommodation, she was not entitled to transfer to any of those positions as an accommodation at her current rate of pay.

In essence, the hospital maintains that a disabled employee for whom a transfer may be an appropriate accommodation under the ADA need not be treated any differently than any other employee seeking a transfer. That may, in general, be a correct statement of the law.

The hospital, however, specifically asserts that because of its policy of not permitting employee transfers above the sixth step in a pay grade, it need not have offered the available positions to plaintiff as an accommodation because she was not "qualified" to transfer to those positions at a rate of pay equal to that she was receiving as a rehabilitation aide. Carried to its extreme, this argument would lead to the conclusion that any employee at the hospital paid above the sixth step in a pay grade is not entitled to reassignment to an available position with the same pay grade as an accommodation under the ADA.

We reject the hospital's arguments in this regard as contrary to the purposes and language of the ADA which requires a "reasonable accommodation," and its implementing regulations and guidelines which clearly contemplate that a reasonable accommodation involving a transfer may result in a lower rate of pay.

### B.

■ The hospital also argues the trial court erred in rejecting its instruction regarding the consequences when a plaintiff under the ADA refuses an employer's offer of accommodation. We conclude the jury was adequately instructed.

The hospital tendered and the trial court rejected the following instruction:

A qualified individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such person chooses not to accept. However, if such individual rejects such an accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential func-

tions of the position held or desired, and as a result of that rejection, cannot perform the essential functions of the position, the individual will not be considered a 'qualified individual with a disability' *and is not entitled to recover damages for any alleged discrimination.* (emphasis added)

The tendered instruction follows closely the language of 29 C.F.R. § 1630.9(d) (1996), with the addition of the emphasized phrase. The jury was instructed that, if the hospital proved by a preponderance of the evidence that it had accommodated plaintiff's disability, then it should find for the hospital.

While the hospital's instruction is a correct statement of the law and may have been preferable, the instruction delivered was, under the circumstances of this case, its functional equivalent and adequately instructed the jury on the applicable law. Therefore, there was no error in rejecting the tendered instruction.

### III.

■ Next, the hospital argues the trial court erred in giving an instruction on punitive damages that required proof by a preponderance of the evidence that the hospital acted maliciously or recklessly. We disagree.

Pursuant to 42 U.S.C. § 1981a (1994), punitive damages are authorized with respect to an ADA claim upon proof that the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." The statute is silent, however, with regard to the showing required.

The hospital tendered an instruction, which reflected Colorado's punitive damages standard in § 13–21–201, C.R.S. (1987 Repl. Vol. 6A) requiring proof beyond a reasonable doubt. *See South Park Aggregates, Inc. v. Northwestern National Insurance Co.*, 847 P.2d 218 (Colo.App.1992). The trial court rejected defendant's instruction on the ground that the preponderance of the evidence standard is that which is required by civil rights statutes and incorporated into the ADA.

The hospital, relying upon *Mitchell v. Keith*, 752 F.2d 385 (9th Cir.1985), argues that when, as here, a federal statute is deficient in furnishing a suitable remedy, the court must look to state law to fashion a remedy. In *Mitchell*, however, it was the standard, *i.e.*, willful and wanton, upon which to impose punitive damages that was missing, not the burden of proof.

42 U.S.C. § 12117 (1994) provides that any violation of the ADA is subject to the same "powers, remedies and procedures" as the civil rights provisions of 42 U.S.C. §§ 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 (1994). Those remedies are specified in 42 U.S.C. § 1981 (1994). The Civil Rights Act of 1991 added 42 U.S.C. § 1981a (1994), which allowed punitive damages in actions brought under the civil rights act, including claims under the ADA.

While 42 U.S.C. § 1981a provides the substantive standard for awarding punitive damages, *i.e.*, with malice or with reckless disregard for a federally protected right, it is silent as to the quantum of evidence necessary for a jury to award punitive damages.

Courts should follow federal law in vindicating federal rights. 42 U.S.C. § 1988 (1994). Federal statutes should be interpreted by reference to federal law rather than state law. *Mitchell v. Keith, supra; Rico–Argentine Mining Co. v. Rico Consolidated Mining Co.*, 74 Colo. 444, 223 P. 31 (1923).

Courts have interpreted 42 U.S.C. § 1981a to require only a preponderance of the evidence for punitive damages. *Florez v. Delbovo*, 939 F.Supp. 1341 (N.D.Ill.1996) (Civil Rights); *Adams v. Pinole Point Steel Co.*, 1995 WL 73088 (N.D.Cal.1995) (Title VII); *Stender v. Lucky Stores, Inc.*, 803 F.Supp. 259 (N.D.Cal.1992) (Title VII). *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

The commentators have generally reached the same conclusion. *See* F. Dee, *The Americans With Disabilities Act of 1990*, Litigation 559 at 611–12 (1994) (PLI Litig. & Admin. Practice Course Handbook Series No. 497 (1994)); R. Fitzpatrick, *Damages Under the Civil Rights Act of 1991*, ALI–ABA Course of Study Current Developments in

Employment Law 773 at 792 (1994); D. Livingston, *The Civil Rights Act of 1991 and EEOC Enforcement*, 23 Stetson L.Rev. 53 at 73 (1993); Devitt, Blackmar, Wolff, *Federal Jury Practice & Instructions—Civil* § 85.19 (4th ed. 1996).

We are cognizant of *Boulder Valley School District R–2 v. Price*, 805 P.2d 1085 (Colo. 1991), in which our supreme court held, with respect to an action brought under 42 U.S.C. § 1983, that in the absence of federal guidance as to the quantum of proof necessary to award punitive damages in a civil rights claim, the state standard requiring proof beyond a reasonable doubt applies.

However, *Boulder Valley School* was decided under 42 U.S.C. § 1983 and not the ADA, which was subsequently adopted. 42 U.S.C. § 1981a, which is the first statutory authorization for punitive damages in cases brought under the Civil Rights Act of 1964, was a part of the Civil Rights Act of 1991, which also postdated *Boulder Valley School.*

In addition, the supreme court in *Boulder Valley School* engaged in the three-part analysis mandated by 42 U.S.C. § 1988, the first prong of which is whether there is a suitable federal rule. Concluding that there was no suitable federal rule at that time, the supreme court applied the state rule. *See Boulder Valley School District R–2 v. Price, supra* (fn. 5).

However, contrary to the circumstances with respect to 42 U.S.C. § 1983 at the time of *Boulder Valley School*, there is, in our view, adequate federal authority interpreting and applying the ADA and 42 U.S.C. § 1981a to conclude that the federal burden of proof, a preponderance of the evidence, is the appropriate burden in Colorado courts for the imposition of a federally authorized remedy. It is incongruous that the selection of the forum for the vindication of a federal right with a federal remedy would impact the burden of proof required to sustain a claim or entitle one to a remedy.

Therefore, we hold that proof by a preponderance of the evidence is required to award punitive damages for a violation of the ADA.

IV.

The hospital also contends that, in light of plaintiff's testimony at trial that her injury was work-related, the trial court erred in denying its motions made during trial to amend its answer to include affirmative defenses based on workers' compensation and for a continuance and mistrial. We disagree with respect to the motion to amend the answer and this is dispositive of all three motions.

A trial court may permit a party to amend its pleadings at any stage of the litigation, unless it causes undue delay or prejudices the other party. C.R.C.P. 15(a). The trial court's ruling will not be disturbed on appeal absent an abuse of discretion. *Super Valu Stores, Inc. v. District Court*, 906 P.2d 72 (Colo.1995).

The ADA is not an exclusive remedy and does not prevent a plaintiff from additionally seeking workers' compensation benefits. 42 U.S.C. § 12201(b) (1994). *see generally*, Equal Employment Opportunity Commission, *Enforcement Guidance No. 915.002*, (February 12, 1997). However, an ADA plaintiff is not required to exhaust other remedies before filing his or her ADA claim, and the exclusive remedy provisions of a workers' compensation statute does not preempt the ADA. *Mangin v. Westco Security Systems, Inc.*, 922 F.Supp. 563 (M.D.Fla.1996); *Wood v. County of Alameda*, 875 F.Supp. 659 (N.D.Cal.1995).

Nevertheless, the hospital argues, relying on *Kandt v. Evans*, 645 P.2d 1300 (Colo.1982) and § 8–43–201, C.R.S. (1996 Cum.Supp.), that the Colorado Workers' Compensation Act provides an employee with a work-related injury an exclusive remedy. We are not persuaded.

In *Kandt v. Evans, supra*, the claimant was injured by the intentional tort of a co-employee. The supreme court declared that the workers' compensation act provided an exclusive remedy and that the plaintiff could not file a separate tort action against her employer and co-employee seeking damages, absent an allegation that the co-employee's actions were not in the course of employment.

Here, in contrast, plaintiff did not seek compensation for her knee injury. She sought damages for the hospital's wrongful act of dismissing her without attempting to accommodate her disability as required by the ADA.

The hospital also relies upon *Cline v. Western Horseman, Inc.*, 922 F.Supp. 442 (D.Colo.1996) and *Reigel v. Kaiser Foundation Health Plan*, 859 F.Supp. 963 (E.D.N.C. 1994), to argue that plaintiff is estopped from asserting that her damages are the result of discrimination. However, in both cases the plaintiffs, prior to filing their ADA claims, filed for and obtained workers' compensation and other disability benefits based on a determination that they were totally disabled and unable to work. The court in both cases ruled that as a matter of law such a determination meant that no reasonable accommodation could have been offered by their employers that would have enabled them to return to work.

In *Wood v. County of Alameda, supra,* an employee similarly situated suffered an on-the-job injury. However, the employee there filed and received workers' compensation benefits prior to bringing her ADA claim. The defendant there argued that the state workers' compensation statute established an exclusive remedy and that the ADA by its terms should defer to the state law.

The *Wood* court undertook an exhaustive analysis of the ADA pursuant to *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990), examining congressional intent, applying principles of statutory construction, and analyzing the overlap of the ADA with state statutes in terms of preemption principles. That analysis led the court to conclude that Congress did not intend the ADA to preclude access to state remedies and that the ADA's express purpose was to maximize plaintiff's options and provide a "floor" rather than a "ceiling" for remedies, and that Congress did not intend that the ADA defer to any state statutes.

In contrast, here the plaintiff sought compensation under the ADA for losses resulting from the hospital's failure to accommodate her known disability. The hospital's obligation to comply with the provisions of the ADA is distinct from, and in addition to, its obligation to compensate employees for injuries suffered while on the job.

Accordingly, we perceive no error on the part of the trial court in denying the hospital's motions.

## V.

██ Plaintiff contends, on cross-appeal, that interest on her damage award should have been calculated from the date of the jury verdict on January 13, 1995, rather than the date judgment was entered, nine months later on October 13, 1995. We disagree.

We note initially that, contrary to the hospital's assertion, plaintiff's claim is not time barred pursuant to C.R.C.P. 59(a). C.R.C.P. 59(b) provides that filing a post-trial motion is not a condition precedent to appeal or cross-appeal.

In arguing for interest from the date of the verdict, plaintiff relies on *Wilson v. Estate of Lawrence,* 910 P.2d 67 (Colo.App.1995), in which a division of this court held that a monetary arbitration award is a liquidated sum that becomes due on the date the award is issued pursuant to § 5–12–102(2), C.R.S. (1992 Repl.Vol. 2).

However, in *Hawley v. Barker,* 5 Colo. 118, 120–121 (1879), a case in which two years passed before judgment was entered, our supreme court held that interest is not recoverable on a jury verdict because:

> a verdict is not conclusive until final judgment is entered upon it; until then it is liable to be made nugatory by arrest of judgment or new trial; until then the issues submitted are not res judicata, nor can it be relied upon as proof of the facts found.

The court reached the same conclusion in *Weaver v. First National Bank,* 138 Colo. 83, 330 P.2d 142 (1958) with respect to cases in which the entry of judgment is delayed, after the trial court took the case under advisement for about a month. In addition, the plain meaning of § 5–12–102(4), C.R.S. (1992 Repl.Vol. 2) is that interest accrues on judgments, not verdicts or decisions.

The same result obtains under the federal statutes. The federal statute awarding post-judgment interest on a monetary damage award calculates such interest "from the date of the entry of the judgment." 28 U.S.C. § 1961 (1994). Some federal circuit courts, in cases in which judgment was delayed, have broadly interpreted the statute to allow interest from the time of the jury verdict. *See Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3d Cir.1987) (3–month delay while court entertained briefs regarding the form of judgment); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Knudsen*, 749 F.2d 496 (8th Cir.1984) (10–month delay because of oversight on part of trial court); *Turner v. Japan Lines, Ltd.*, 702 F.2d 752 (9th Cir.1983) (entry of final judgment delayed approximately four years by entry of judgment notwithstanding the verdict which was later vacated and the original jury verdict reinstated).

However, the U.S. Supreme Court, cognizant of the split in the circuits, strictly construed § 1961 in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842, 852 (1990) stating:

> Both the original and the amended versions of § 1961 refer specifically to the 'date of judgment,' which indicates a date certain. Neither alludes to the date of the verdict, and there is no legislative history that would indicate congressional intent that interest run from the date of verdict rather than the date of judgment. Even though denial of interest from verdict to judgment may result in the plaintiff bearing the burden of the loss of the use of the money from verdict to judgment, the allocation of the costs accruing from litigation is a matter for the legislature, not the courts.

*See also Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir.1995) (awarding interest pursuant to § 1961 from the date of judgment, not the date of the verdict, in a claim under the Age Discrimination in Employment Act).

Accordingly, we hold that the trial court properly accrued interest on plaintiff's award from the date judgment was entered.

## VI.

■ However, we do agree with plaintiff's second contention on cross-appeal that she is entitled to attorney fees and costs incurred in defending post-trial motions and in responding to the hospital's appeal.

In its order, the trial court awarded plaintiff her reasonable attorney and paralegal fees, as a prevailing plaintiff in a civil rights action, pursuant to 42 U.S.C. § 12205 (1994). The court declined, however, to award any further fees.

■ Our review of the court's award of attorney fees is for an abuse of discretion. *Langseth v. County of Elbert*, 916 P.2d 655 (Colo.App.1996). However, we may review de novo elements of the court's legal analysis in reaching its decision. *Regional Transportation District v. University of Colorado Hospital Authority*, 921 P.2d 56 (Colo.App. 1996).

A "prevailing party" under § 12205 of the ADA is entitled to reasonable attorney fees and costs when successful on the merits. *Pottgen v. Missouri State High School Activities Ass'n*, 103 F.3d 720 (8th Cir.1997). Similarly, a prevailing party is also entitled to attorney fees and costs when successful on appeal. *Corder v. Gates*, 104 F.3d 247 (9th Cir.1996).

Here, plaintiff is successful on the merits of this appeal. Therefore, she is entitled to recover reasonable attorney fees and costs.

The judgment is affirmed, and the cause is remanded for a determination and award of attorney fees and costs incurred by plaintiff in defending post-trial motions and in responding to the hospital's appeal.

DAVIDSON and ROTHENBERG, JJ., concur.