**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Cornelius WILLIAMS, Defendant–
Appellant.**

No. 98CA0162.

Colorado Court of Appeals,
Div. II.

Sept. 30, 1999.

Rehearing Denied Nov. 18, 1999.

Certiorari Denied April 10, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Assistant Solicitor General, Evan W. Jones, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Cornelius Williams, appeals the judgment of conviction entered upon jury verdicts finding him guilty of sale and possession of a controlled substance. We affirm.

A police officer testified at trial that, as part of an undercover drug operation, he approached a man on the street and asked if he could buy $40 worth of crack cocaine. The man introduced the officer to a woman, who instructed the two men to go around the corner and wait.

The woman returned with a second man, identified by the officer as defendant, who

handed the officer a piece of tissue paper containing two small bags of crack cocaine. In exchange, the officer gave defendant two pre-marked $20 bills. The bills were not found on defendant when he was arrested at a convenience store a short time later.

I.

Defendant raises three claims of error relating to the adequacy of the trial court's advisement concerning his right to testify. We find no error.

A.

Defendant argues that the trial court erred in failing to advise him that, if he testified, it would instruct the jury that his prior convictions could be considered solely for impeachment purposes. We conclude that *People v. Blehm*, 983 P.2d 779 (Colo.1999), is dispositive of defendant's contention.

In *Blehm*, the supreme court reiterated the requirements of a proper trial court advisement as originally set forth in *People v. Curtis*, 681 P.2d 504 (Colo.1984). In discussing the fifth essential element of a proper *Curtis* advisement—*i.e.*, that a defendant's prior felony convictions may be used to impeach credibility—the court expressly rejected the argument that a defendant needs to be advised both that his conviction may be used to impeach credibility and that the jury will be so instructed. The court stated:

> Although the defendant must be advised that the felony convictions may be used to impeach his credibility, the defendant need not be informed of the process by which the fact-finder may learn of this limited use of the convictions (e.g., through a jury instruction if the fact-finder is a jury). Thus, although it is better practice to advise the defendant "that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility," ... the concept that the conviction may be used to impeach credibility is all that is required to be communicated to the defendant.

*People v. Blehm, supra*, 983 P.2d at 794.

■ Here, the trial court advised defendant as follows:

First, you have the absolute right to testify here today. If you choose to testify, no one can stop you. If you choose to testify, you will be subject to cross-examination the same as any other witness. And if you have previously been convicted of one or more felony offenses, those offenses may be made known to the jury during your testimony either during direct or cross-examination. They may be made known to the jury only for the effect that might have on your credibility.

Because the trial court advised defendant that his convictions could be used to impeach his credibility, the advisement adequately conveyed the fifth *Curtis* element even though it did not include a statement that the jury would be so instructed.

B.

Defendant next asserts that the trial court's *Curtis* advisement was inadequate because the court did not expressly find on the record that he had validly waived his right to testify. We disagree.

■ A trial court has a responsibility to make a determination on the record whether a defendant has effectively waived his right to testify. *Roelker v. People*, 804 P.2d 1336 (Colo.1991).

In *Blehm*, the supreme court concluded that: "So long as the defendant is advised of each *Curtis* element, the defendant's waiver of the right to testify is voluntary, knowing, and intelligent." *People v. Blehm, supra*, 983 P.2d at 794; *see also People v. Mitchell*, 829 P.2d 409 (Colo.App.1991)(evidence supported conclusion that defendant's waiver of his right to testify was voluntary even though court never obtained defendant's express waiver on the record).

■ The trial court here gave defendant a complete *Curtis* advisement, including the paragraph set forth above and additional explanations of his right not to testify and right to make the decision himself. The court then asked defendant, on the record:

THE COURT: Do you understand these rights that I have explained?

DEFENDANT: Yes.

THE COURT: Have you decided whether you will or will not testify here today?

DEFENDANT: I won't.

THE COURT: In making this decision, is anybody forcing you to?

DEFENDANT: No.

THE COURT: Is it your decision only and a voluntary decision?

DEFENDANT: Yes.

THE COURT: In making this decision today, are you clear headed?

DEFENDANT: Yes, I am.

THE COURT: Today are you taking any prescription medicine?

DEFENDANT: No.

THE COURT: Are you under the influence of any street drugs or alcohol?

DEFENDANT: No.

The court then asked both counsel whether they had anything to add. It concluded by stating to defense counsel: "Your client has advised this Court that he chooses not to testify."

The trial court made a sufficient record to establish that defendant's waiver was voluntary, knowing, and intelligent. Defendant is not entitled to relief simply on the basis that the court did not expressly state on the record its finding—implicit from the colloquy and concluding statement set forth above—that he had effectively waived his right to testify.

## C.

We likewise reject defendant's contention that his waiver was invalid because the trial court prefaced its *Curtis* advisement with an apology for invading the province of defense counsel.

■ Before giving the advisement, the court stated: "I am going to give the *Curtis* advisement, and I apologize to you because I always think giving it is to sort of invade the province of defense counsel, and I know you told your client these things anyway. But [*Curtis*] says that's what I am supposed to do."

Defendant asserts that this statement undermined the portion of the *Curtis* advisement intended to ensure that a defendant's desire to testify is not overborne by his lawyer. However, the court advised defendant in that regard as follows:

Third right you have is the right to make the choice, I am going to testify, I am not going to testify. It's your choice. It is not [your lawyer's] choice. If you have a disagreement, you think one thing ought to be done, [your lawyer] has recommended something else ought to be done, the choice is yours and that choice will control. I always recommend persons in your situation consult with their attorney. I mean, he has the law degree, and he has the experiences, and he can give you advice. But the decision, nonetheless, is yours.

Thereafter, as noted, the court asked defendant if anyone was forcing him not to testify, and if the decision was his alone. Defendant answered no to the first question and yes to the second.

We do not agree with defendant that the court's brief initial comment somehow negates its advisement or warrants disregarding defendant's own statement that the decision to testify was his alone.

## II.

Defendant next argues that the uncorroborated testimony of the officer was insufficient to support his convictions for sale and possession of a controlled substance. We are not persuaded.

■ When assessing the sufficiency of the evidence in support of a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771 (Colo.1999).

■ It is for the trier of fact to determine the credibility of witnesses and the weight to be given to their testimony. We may not disturb those determinations unless the evidence, when appropriately viewed, is legally

insufficient to support a finding of guilt. *People v. Fox,* 928 P.2d 820 (Colo.App.1996).

■ The prosecution's evidence at trial consisted primarily of the testimony of one police officer. The officer testified that defendant handed him two bags of cocaine in exchange for two $20 bills. On cross-examination, defense counsel vigorously challenged the officer's identification of defendant as the person who sold him the drugs, suggesting that the officer was motivated by his desire to be promoted to detective. Defendant also established that the arresting officer did not find the pre-marked $20 bills on defendant when he was arrested. The jury nevertheless returned a guilty verdict as to both of the charged offenses.

Contrary to defendant's contention, the evidence was not legally insufficient simply because it consisted of the uncorroborated testimony of a single witness. *See Davis v. People,* 176 Colo. 378, 490 P.2d 948 (1971)(jury could convict based on the uncorroborated testimony of an accomplice). We may therefore not disturb the jury's apparent decision to believe the officer's testimony notwithstanding defendant's challenges to his credibility. *See People v. Fox, supra.* Further, as addressed below, the officer's testimony, if believed, was sufficient to support a conviction for possession, as well as sale, of a controlled substance.

### III.

■ Defendant contends that he cannot be convicted of both possession and sale of cocaine when both convictions are based on the same statute and are based on identical facts and elements. Again, we disagree.

Both of defendant's convictions are based on his violation of a single statute, § 18–18–405(1)(a), C.R.S.1998. That statute provides that it is unlawful for any person knowingly to manufacture, dispense, sell, distribute, possess, or to possess with intent to manufacture, dispense, sell or distribute a controlled substance.

Defendant characterizes § 18–18–405(1)(a) as defining a "single offense"—"Unlawful distribution, manufacturing, dispensing, sale, or possession"—which can be committed in different ways. Thus, he argues, under *People v. Lowe,* 660 P.2d 1261 (Colo.1983), and its progeny, he cannot be convicted of both sale and possession, since both charges arose out of the same act and are merely alternative means of committing a single offense.

Initially, we disagree with defendant's characterization of § 18–18–405(1)(a) as a statute proscribing a single offense.

"Sale" and "possession"—the two activities at issue here—are separate offenses, not simply alternative ways of committing the same offense. "Sale," for purposes of § 18–18–405(1)(a), means "a barter, an exchange, or a gift, or an offer therefor." Section 18–18–102(33), C.R.S.1998; *see also People v. Farris,* 812 P.2d 654 (Colo.App.1991)("sale" is used to describe an exchange involving the unauthorized delivery of a controlled substance).

■ The term "possess," when used in a statute defining possession of a controlled substance, means "actual control, care and management" of the drug. A defendant possesses a controlled substance when the defendant knows of the substance's presence, the substance is immediately accessible, and the defendant exercises dominion and control over it. *In re People v. Villapando,* 984 P.2d 51 (Colo.1999).

In *Villapando,* the defendant was charged with unlawful use and unlawful possession of marijuana. The supreme court concluded it was not possible for an individual voluntarily to use a controlled substance without also possessing it. We do not agree with defendant's contention that *Villapando* supports a similar conclusion as to sale and possession. It is possible to establish sale of a controlled substance even without establishing that the defendant "possessed" the substance under the definition set forth above.

In rejecting a claim that double jeopardy protections barred a conviction of both possession and sale of marijuana, the supreme court recognized that "possession and sale are directed at different sorts of criminal conduct which may be independently punished." *People v. Bloom,* 195 Colo. 246, 248–49, 577 P.2d 288, 290 (1978).

We thus conclude that § 18–18–405(1)(a) proscribes multiple drug-related offenses, not a single offense. Therefore, the cases on which defendant relies—*People v. Lowe, supra; People v. Lefebre,* 981 P.2d 650 (Colo.App.1998); and *People v. Lucero,* 985 P.2d 87 (Colo.App.1999)—are inapposite, because all involved situations in which the defendants were convicted of committing a single offense in more than one way. Here, defendant was convicted of committing two separate offenses.

We also reject defendant's related contention that he could not be convicted both of sale and possession because both are proscribed in a single statute.

As noted, the supreme court recognized in *People v. Bloom, supra,* that possession and sale of drugs may be independently punished. Defendant attempts to distinguish *Bloom* by arguing that sale and possession of marijuana were proscribed by separate statutes at the time the case was decided. However, *Bloom* expressly states that both the sale and the possession charges were premised on a single statute, § 48–5–2, C.R.S. 1963. While the two offenses were set forth in different subsections of a successor statute at the time the case was decided, there is nothing in *Bloom* to suggest that that fact had any effect on the supreme court's analysis.

In *People v. Thurman,* 948 P.2d 69 (Colo. App.1997), a division of this court held that convictions for distribution and possession of a controlled substance could stand even though they were based upon one statute, § 18–18–405(1)(a), and arose out of the same incident. Although defendant urges us to decline to follow *Thurman,* we agree with its analysis and with its conclusion. The mere fact that dual convictions are based on a single statute does not require that one conviction be vacated.

Finally, even though defendant's convictions arose out of a single transaction, they are not supported by identical facts, as he contends. His conviction for possession was supported by the officer's testimony that defendant handed him a piece of tissue paper containing two small bags of crack cocaine.

From this, the jury could reasonably have inferred that he knew of the presence of the cocaine, that it was immediately accessible, and that he exercised dominion and control over it. *See People v. Villapando, supra.* Defendant's conviction for sale, on the other hand, was supported by the officer's additional testimony that he handed defendant $40 in exchange for the cocaine.

## IV.

Defendant argues that the prosecutor's comments during closing argument deprived him of his rights to due process and a fair trial. While we disapprove of certain statements made by the prosecutor, we cannot conclude that these statements, either individually or when considered in the context of the entire argument, warrant reversal of defendant's conviction.

A prosecutor is entitled to argue the facts in evidence and reasonable inferences from those facts. *People v. Herr,* 868 P.2d 1121 (Colo.App.1993).

Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury, and such evaluation is best done by the trial court. Consequently, the trial court's rulings on this issue will not be disturbed on appeal in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Holloway,* 973 P.2d 721 (Colo.App.1998).

### A.

Defendant challenges one comment to which objection was made but overruled. He contends that the prosecutor improperly urged the jury to turn away from the facts, and to consider, instead, the impact of its verdict on drug dealing, when he stated in closing:

> [Defense counsel] will tell you, make your conscience be your guide. He's going to tell you Mr. Williams' life is on the line here. So are other people's. Let conscience be your guide to convict, but also let your conscience be your guide to acquit, because if you acquit, you let another drug

dealer back out on the streets. Supply versus demand. Only allow you to say he'll keep going and this problem with [sic] never get better. Convict Mr. Williams of sale of—sale of a controlled substance, possession, because that's what he's guilty of without a doubt.

Defense counsel objected on the basis that the prosecutor was attributing possible future crimes to defendant. The court overruled the objection.

As discussed below, the evidence permitted the inference that defendant not only sold drugs on this one occasion but was in fact a drug dealer. Further, we do not view the prosecutor's comment as improper when evaluated in the context of his entire argument, which urged the jury to convict based on the evidence and reasonable inferences therefrom. Therefore, the court did not abuse its discretion in overruling the objection.

### B.

■■■ Defendant cites several prosecutorial comments to which no contemporaneous objection was made. As to these remarks, our review is limited to determining whether they rise to the level of plain error—*i.e.,* whether they "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987). Unless a prosecutor's comment is flagrant, or glaringly or tremendously improper, it is not plain error. *People v. Collie,* 995 P.2d 765 (Colo. App.1999).

■■ In assessing a plain-error claim of prosecutorial misconduct in summation, we are to take into account defense counsel's "opening salvo" that preceded the challenged remark. *See Wilson v. People, supra.*

### 1.

■■ At the beginning of his closing argument, the prosecutor stated: "July 22, Cornelius went to work. Cornelius' job is to deal drugs on the street. That's what he does. That's how he makes his income." Defen-

dant claims that the references to drug dealing as his "job" were improper.

Unsubstantiated allegations in closing argument that a defendant had a history of similar criminal misconduct have been held to constitute prosecutorial misconduct. *See People v. Jones,* 832 P.2d 1036 (Colo.App. 1991).

Here, however, the evidence of how the officer was put in contact with defendant could reasonably support an inference that defendant sold drugs regularly, working with two accomplices to locate prospective purchasers. *See People v. Holloway, supra* (characterization of defendant as drug dealer was not improper comment where it was based on reasonable inferences from the evidence).

■■ Defendant also complains of the prosecutor's "overly familiar" use of his first name. We agree that it is inappropriate for a prosecutor to refer to a defendant by his or her first name. However, we note that, apart from this initial reference, the prosecutor referred to defendant as "Mr. Williams" and "Cornelius Williams" throughout the remainder of his argument.

### 2.

■■ Defendant challenges the prosecutor's statement that he "didn't just come to get another notch on my trial case. I came here for one reason, and that one reason is justice. And Detective Jackson came in here for that same reason, and that's why I am standing here before you.... Detective Jackson has to come in here and tell you the truth and has to be truthful to himself. Being true to himself, says that's not the guy."

■■ While a prosecutor may draw reasonable inferences from the evidence as to the credibility of witnesses, he or she should refrain from expressing a personal opinion as to the veracity of a witness, *Wilson v. People, supra,* or from referring to his or her own honesty or integrity as a public official. *See People v. Wright,* 182 Colo. 87, 511 P.2d 460 (1973).

Contrary to defendant's contention, the prosecutor here was not improperly vouching

for the credibility of Detective Jackson. The officer's credibility was a central issue at trial, with both sides arguing reasons to believe or reject his testimony. Defense counsel suggested on cross-examination that the officer misidentified defendant because he was intent on furthering his own career. To counter that inference, the prosecutor was arguing here that the officer was "being true to himself" when he told his fellow officers they had initially apprehended the wrong suspect.

■ While the prosecutor's statement that he came to seek justice could be characterized as an inappropriate reference to his own integrity as a public official, we do not view that isolated statement as rising to the level of plain error. *Cf. People v. Wright, supra,* 182 Colo. at 92, 511 P.2d at 463 (prosecutor's remarks, "I want you to believe me," "I'm an honest man," and "I'll vouch for the [prosecution witnesses'] veracity" were improper and overzealous).

### 3.

■ Defendant further contends that the prosecutor improperly bolstered his case by arguing that $40 was found in defendant's pocket, a fact which he claims was not supported by the evidence.

The arresting officer testified that the marked "buy money" was not found in defendant's possession. On cross-examination, defense counsel again elicited testimony that the pre-recorded bills were not found on defendant, and then continued:

Q: He did have some money in his possession, right?

A: I believe so.

Q: About another $40 or so and change?

A: I don't know the exact amount.

In closing, the prosecutor stated: "And I find it ironic, and maybe you should take notice, that $40 was found in Mr. Williams' pockets. Could he have changed it out? You decide." Thereafter, in his own closing, defense counsel made much of the fact that the two pre-marked bills were not found on defendant or anywhere in the convenience store where he was arrested, and argued that the evidence did not support a conclusion that defendant had made a purchase or otherwise obtained different bills for the marked $20 bills.

Although the People argue that, based on the colloquy set forth above, the jury could reasonably have inferred that the amount of money found on defendant was approximately $40, we agree with defendant that the prosecutor's remark was inaccurate inasmuch as there was no testimony establishing the precise amount of money found on defendant. Nevertheless, we cannot say that the prosecutor's brief reference to the $40, even if incorrect, was so prejudicial when considered in the context of the entire closing argument as to constitute plain error.

### 4.

■ Defendant also challenges the following comments made by the prosecutor at the beginning of his rebuttal argument:

Acquit a drug dealer to deal crack cocaine to druggies and everybody else, and send me a message, I will carry it over to the Denver department, I will say this is what we need to do better? That is not reasonable. That is improper. Do not do that to send me a message. The message is clear. Message is clear to the police officers.... The evidence that you've got in this case is right here.... Do not acquit to send me a message, Acquit because you don't think I did my job, because Kevin Jackson is not credible. Because that's what you've got to do.

Although defendant argues that this was inappropriate "send a message" argument, we conclude that it was not improper when considered in light of defense counsel's immediately preceding remarks. *See Wilson v. People, supra.*

At the conclusion of his argument, defense counsel had urged the jury to "send a message" to the prosecution and the Denver Police Department. In the response set forth above, the prosecutor was not himself urging the jury to send a message, but was commenting on the inappropriateness of defense counsel's suggestion that the jury do so. Moreover, the prosecutor correctly ad-

monished the jurors that they should decide based on the evidence, not in order to send a message, and should acquit only if they did not find the officer credible.

### 5.

Defendant claims that the prosecutor belittled the defense argument as mere speculation, and improperly expressed his opinion that defendant was guilty, in his final comments:

> [Defense counsel] wants you to become speculative. He wants you to think of everything that possibly could have gone wrong.... Do not speculate. That's what they want you to do. And I applaud [defense counsel] for doing his job, but that's not your job.... Think about what you heard and judge on the facts and evidence that you have before you, because what you have before you is a guilty man trying to make you speculate. Find him guilty. Find him guilty and send a message to Mr. Williams, don't deal crack cocaine in your city. It's illegal. It's immoral. It's wrong. Thank you.

We do not agree that these remarks were improper. The prosecutor was entitled to argue that the evidence supported a guilty verdict and that a verdict of not guilty would necessarily require speculation. Further, it was not improper for the prosecutor to ask the jury to find defendant guilty and to state briefly that drug dealing is immoral and wrong as well as illegal.

In sum, while we have found portions of the prosecutor's closing argument to be inappropriate or incorrect, we cannot say that the prosecutor's remarks—either individually or cumulatively—so undermined the fundamental fairness of the trial as to warrant setting aside defendant's convictions on the basis of plain error. *See Wilson v. People, supra.*

The judgment is affirmed.

Judge PLANK and Judge JONES concur.