The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Andrea DARBE, Defendant–Appellant.

No. 99CA2521.

Colorado Court of Appeals,
Div. IV.

May 9, 2002.

Rehearing Denied Aug. 15, 2002.

Certiorari Denied Jan. 21, 2003.

Ken Salazar, Attorney General, Dawn M. Weber, Assistant Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Andrea Darbe, appeals the judgment of conviction entered on a jury verdict finding her guilty of second degree murder committed in the heat of passion. She also appeals her sentence to a term of twenty-two years in the Department of Corrections. We affirm.

Evidence was presented at trial that on the evening of December 18, 1998, defendant shot and killed her father. At the time of the shooting, there were four people in the

father's gun shop where the shooting occurred, the father, defendant's mother and sister, and defendant. However, the testimony of the mother, sister, and defendant conflicted.

Defendant testified that during the previous week she was fearful of black men after being robbed at gun point while at her place of employment. Not wanting to be prejudiced as she had observed her father to be, she went to her father's shop the evening of December 18 to explain things to him "so he would stop being the way he was." Instead of talking about prejudice, she began talking and arguing with her father about how he had been treating her mother. According to defendant, she told her father that "if he hurt her [mother] ever again, [she] would kill him." Her father then proceeded to remove a gun from the holster he was wearing, cocked the gun, handed it to defendant, and said, "Go ahead and kill me because I'm not leaving her alone." Defendant stated that as he stepped towards her, she began shooting and continued to shoot until the gun was empty.

Defendant also presented extensive evidence of a history of physical and verbal abuse committed by her father against her, her mother, and her sister. Although the trial court instructed the jury on self-defense and accepted a portion of defendant's theory of defense instruction, it refused the remainder of defendant's tendered instructions on domestic violence.

## I.

Defendant first contends that the trial court committed reversible error by refusing to instruct the jury that it could consider evidence of domestic violence in deciding whether defendant acted in self-defense or defense of others. We disagree.

Defendant tendered two instructions pertaining to self-defense. First, defendant tendered an instruction informing the jury of her right to act on appearances, which the trial court rejected in its entirety. Defendant does not challenge that ruling.

Defendant also tendered a second instruction, which stated:

[Defendant's] defense is that she acted in defense of persons as otherwise described in these instructions; and that [victim's] repeated physical, verbal and mental abuse, including threats to kill [defendant], her mother and her sister, reasonably caused her to act in self-defense and/or defense of others.

The evidence in this case has raised an issue concerning domestic violence. Domestic violence is not in and of itself a defense to a crime. However, if you find that [defendant] did suffer from domestic violence, that is evidence which you can use in deciding the issues relating to the affirmative defense of self-defense and defense of others.

The trial court agreed to submit the first paragraph of this instruction, but refused to submit the second paragraph, stating that the jury was adequately instructed on the issues in the case and that the theory of defense, without the language regarding domestic violence, was appropriately stated.

The trial court also provided the following instruction on self-defense, which tracked the language in CJI—Crim. 7:17 (1983) and conformed to § 18–1–704, C.R.S.2001:

It is an affirmative defense to the crime of Second Degree Murder that the defendant used deadly physical force because

1. she reasonably believed a lesser degree of force was inadequate, and

2. had reasonable grounds to believe, and did believe, that she or another person was in imminent danger of being killed or of receiving great bodily injury, or

3. the other person is committing or reasonably appeared to be about to commit assault in the first degree or assault in the second degree.

## A.

Defendant asserts that the trial court's instruction did not inform the jurors that they could consider prior acts of domestic violence in determining whether her actions were reasonable. In her view, the instruction could have led the jurors to conclude that the history of abuse committed against defendant was not to be considered in deter-

mining whether she acted in self-defense or defense of others. We conclude the jury was adequately instructed.

██ When the record contains any evidence tending to establish self-defense, a defendant is entitled to have the jury properly instructed with respect to that defense. *Idrogo v. People,* 818 P.2d 752 (Colo.1991); *People v. Garcia,* 1 P.3d 214 (Colo.App.1999), *aff'd,* 28 P.3d 340 (Colo.2001).

██ An instruction couched in the language of the statute is generally considered to be sufficient. Further, it is unnecessary to give an instruction that is encompassed in other instructions given by the court. *People v. Garcia, supra.*

██ Self-defense under § 18–1–704 takes into account both the reasonable belief and the actual belief of the defendant. *People v. Toler,* 981 P.2d 1096, 1099 (Colo.App. 1998)(court may properly refuse to give an instruction that calls only for a subjective test), *aff'd,* 9 P.3d 341 (Colo.2000).

A self-defense instruction based on § 18–1–704 was expressly approved in *Beckett v. People,* 800 P.2d 74 (Colo.1990), as adequately advising the jury that it is to consider the totality of the circumstances in evaluating the reasonableness of the defendant's actions. Likewise, in *Hare v. People,* 800 P.2d 1317 (Colo.1990), the supreme court held that the instruction, which was very much like the self-defense instruction given here, permits the jury to consider, from the defendant's viewpoint, whether the defendant was justified in using physical force in self-defense.

██ Evidence of a victim's prior acts of violence may, in certain circumstances, be considered in the context of self-defense. *See People v. Laurson,* 15 P.3d 791 (Colo. App.2000)(self-defense instruction permitted jury to consider the reasonableness of the defendant's actions given his knowledge of the victim's prior acts of violence); *People v. Gallegos,* 950 P.2d 629 (Colo.App.1997)(self-defense instruction permitted jury to consider whether the defendant acted reasonably given the victim's history of aggression towards him); *People v. Yaklich,* 833 P.2d 758, 761 (Colo.App.1991)(evidence of battered woman syndrome may, in certain circumstances, be considered in the context of self-defense).

As defendant points out in her opening brief, a division of this court has approved a battered woman syndrome instruction nearly identical to the portion of defendant's second tendered instruction that the trial court rejected here. *See People v. Garcia, supra.* However, the jury in that case was not given an instruction like the one the trial court approved here. The instruction given here described defendant's defense and stated her claim that the physical, verbal, and mental abuse by the father against defendant and her family reasonably caused her to act in self-defense or the defense of others.

██ We agree that defendant's knowledge of prior acts of domestic violence was relevant evidence for the jury to consider and that the rejected jury instruction was a correct statement of the law. However, it is not error for a court to refuse a tendered instruction, even if correct in legal effect, if the other instructions given adequately apprise the jury of the law. *People v. Ridenour,* 878 P.2d 23, 25 (Colo.App.1994).

██ Here, not only was the jury properly instructed, but also defendant was permitted to present extensive evidence of her exposure to domestic violence, and defense counsel was allowed to comment on that subject in opening statements and closing arguments. Defendant testified that she was the victim of physical and verbal abuse at the hands of her father throughout childhood until she was sixteen years old, although she admitted that at the time of the shooting she had not lived with her father for three years. Her testimony regarding family abuse was corroborated by her sister, her mother, and several family friends. In addition, a domestic violence expert testified on defendant's behalf that because of defendant's prior exposure to domestic abuse at the hands of her father, at the time of the shooting she "had direct fear for herself, her life, and her family."

Finally, the instruction on self-defense given here adequately advised the jury that it was to consider the totality of the circumstances in evaluating the reasonableness of

defendant's actions. *See Beckett v. People, supra; Hare v. People, supra.* The self-defense instruction did not prohibit the jury from considering whether defendant suffered from domestic violence or considering evidence of domestic violence with respect to the affirmative defense of self defense. The cases from other jurisdictions on which defendant relies do not involve the sort of instructions given here and thus do not persuade us to reach a different result.

We conclude that the trial court did not err in rejecting defendant's additional self-defense instructions. *See People v. Laurson, supra; People v. Gallegos, supra.*

## B.

■ Nor are we persuaded by defendant's contention that the prosecutor's cross-examination of defendant's expert witness and his comments during closing argument warranted the giving of the rejected self-defense instructions.

Defendant complains of two instances during trial where the prosecutor argued that the jurors could not consider defendant's background in deciding whether her actions were consistent with those of a reasonable person.

Defendant first points to the following colloquy during the prosecution's cross-examination of defendant's expert witness:

Prosecutor: Well, when we talk about reasonable, we are talking about what is reasonable to most people, right?

Witness: Absolutely, we are talking about what is reasonable to most people. But again, [defendant] has been the victim of some pretty traumatic abuse. And you and I—what seems amenable to us, is not fair to put that same standard to [defendant]

. . . .

Prosecutor: So does that mean that the law applies differently to [defendant] in your opinion?

Court: Objection sustained.

Prosecutor: So she is different than a normal reasonable person.

Witness: Her reactions are going to be different in my opinion.

Defendant also complains that the prosecutor persisted in misstating the law of self-defense during closing argument by arguing that the term "reasonable person" in the jury instruction meant: "A reasonable person in [defendant's] place out there. Not a person with [defendant's] background. It's not a person with what has happened to her in the past, it's a reasonable person. That's what the instruction says."

First, we note that the prosecutor's remarks during closing were made in reference to the jury instruction on provocation, not the instruction on self-defense. The instruction on self-defense used the term "a person reasonably believes," not "reasonable person" as set forth in the instruction on provocation, which referred to "a highly provoking act of the intended victim which affected the defendant sufficiently to excite such an irresistible passion in a reasonable person."

■ Second, the phrase "reasonable person" as used in an analogous context in the statute defining heat of passion manslaughter, has been defined to mean an objectively reasonable individual and not a subjectively reasonable one possessing the individual defendant's personality traits or defects. *See People v. Dooley,* 944 P.2d 590, 594 (Colo. App.1997). Thus, even though the charge against defendant was second degree murder, the prosecutor's remarks during closing were a correct statement of the law of provocation.

Under these circumstances, it was also reasonable for the prosecutor to attempt to elicit an admission from defendant's expert witness that defendant's actions were not objectively reasonable.

Consequently, the prosecutor did not misstate the law, and his comments did not necessitate additional instructions.

## II.

■ Defendant next contends that the prosecutor engaged in repeated instances of misconduct that deprived defendant of her right to a fair trial and require reversal. We conclude that even if the prosecutor's com-

ments were at times improper, they do not warrant reversal of defendant's conviction.

### A.

Defendant first asserts that the prosecutor improperly attempted to appeal to the emotions of the jurors by arguing that defendant's conduct was a "moral choice." We perceive no reversible error.

### 1.

Defendant first points to the following colloquy during the prosecutor's cross-examination of defendant:

Prosecutor: Now, you're 22 years old? You [were] 22 years old then, were you not?

Defendant: Yes.

Prosecutor: People make their own decisions in life, yes?

Defendant: Pretty much, yes.

Prosecutor: They make their own moral choices?

Defense Counsel: I'm going to object as redundant and asked and answered.

The Court: I'm going to sustain that objection.

Prosecutor: On December 18, 1998, you made the moral choice to [shoot] your dad, did you not?

Defense Counsel: Object to—object as answered [sic] and answered.

After defense counsel objected, the court called both counsel to the bench and admonished the prosecutor, stating, "I'm concerned about.your choice of words because I think that's really inflammatory and they're prejudicial. And we are not here to decide whether or not she made the right moral choice. I don't think that's a proper question." At defendant's request, the court instructed the jury to "disregard the [prosecutor's] last question."

■■■ Here, defendant's specific objection was to redundancy, not to the relevance or prejudicial impact of "moral choice." Further, the trial court instructed the jury not to consider the prosecutor's comment. Unless there is a showing to the contrary, a reviewing court must presume that the jury fol-

lowed the court's instruction, and thus, we perceive no error. *See People v. Ramirez,* 997 P.2d 1200 (Colo.App.1999), *aff'd,* 43 P.3d 611 (Colo.2001).

### 2.

Defendant contends, however, that the prosecutor persisted during closing argument in asserting that defendant must be found guilty because she made the "moral choice" to pull the trigger. The prosecutor stated without objection:

[Defendant] testified. What does she tell you? She tells you that she goes in, and again ... it's a constant theme through that whole thing that everything in every person's life in this family, we blame it on dad. We don't make personal choices. We just choose to blame it on dad.

■■■ Counsel may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom, but may not misstate or misinterpret the law. *People v. Shepherd,* 43 P.3d 693 (Colo.App. 2001). It is impermissible for a prosecutor to use arguments that are calculated to inflame the passions or prejudice of the jury or that tend to influence jurors to issue a verdict based on preexisting biases rather than on facts in evidence and inferences drawn from those facts. *People v. Dunlap,* 975 P.2d 723 (Colo.1999).

■■■ Here, the prosecutor used the term "personal choices," not "moral choice." Further, contrary to defendant's assertion, these comments did not improperly appeal to the passions or prejudices of the jury, nor did they encourage the jury to issue a verdict based on preexisting biases rather than facts in evidence. *See People v. Dunlap, supra.* The prosecutor's remarks were not inappropriate in light of the evidence presented. *See People v. Shepherd, supra; see also People v. Williams,* 996 P.2d 237 (Colo.App.1999)(prosecutor's remark that drug dealing is immoral and wrong was not improper).

Accordingly, we find no error was occasioned by these remarks.

## B.

We also disagree with defendant's contention that the prosecutor repeatedly "misinstructed" the jurors on the applicable law of the case. Defendant specifically complains that the prosecutor argued during cross-examination of defendant's expert witness and during closing argument that the jurors could not consider defendant's background or what happened to her in the past in deciding whether her actions were consistent with those of a reasonable person.

As discussed in Part I, the prosecutor did not misstate the law by asking defendant's expert whether defendant's reactions were different from those of a normal reasonable person, or by arguing that the meaning of the phrase "reasonable person" in the jury instruction on provocation was to be measured by an objective standard. *See People v. Dooley, supra.*

## C.

Defendant next contends that the prosecutor improperly denigrated defense counsel and improperly expressed his opinion of the defense theory. We disagree.

Arguments made for the obvious purpose of denigrating defense counsel are improper and constitute professional misconduct. *See People v. Jones,* 832 P.2d 1036, 1038 (Colo.App.1991)(citing 1 ABA, Standards for Criminal Justice, Standard 3–5.2 (2d ed.1986)). Thus, it is improper for a prosecutor to assert that opposing counsel knows that the accused's case is not meritorious. *People v. Ramirez, supra.*

Here, during closing argument the prosecutor stated:

Counsel in this case is counting on two simple bets. He's counting on one bet, that you guys dislike [the victim] so much there's no way you could find [defendant] guilty. He is counting on a second bet. A second bet is that you have so much sympathy for her that you cannot find her guilty.

That's not what we are here to do. That's not what a court of law is for. Ladies and gentlemen, we live in the land of laws. Our country is governed by laws. Our country is not governed by emotions.

Defendant contends that by arguing that defense counsel was "counting" on the jurors not following the law, the prosecutor improperly suggested that defense counsel knew defendant's case was not meritorious and lacked a good faith basis for asserting self-defense and defense of others. We disagree.

Defense counsel did not object to these remarks; therefore we review them for plain error. Plain error is that which so undermines the fundamental fairness of a trial that it casts serious doubt on the reliability of the ultimate verdict. Prosecutorial misconduct amounts to reversible plain error only where there is a substantial likelihood that it affected the verdict or deprived the defendant of a fair and impartial trial. *Harris v. People,* 888 P.2d 259, 267 (Colo.1995).

Unless a prosecutor's comment is flagrant, or glaringly or tremendously improper, it is not plain error. *People v. Williams, supra,* 996 P.2d at 244.

Here, the jury was instructed: "Your decision must be made by applying the rules of law which I give you to the evidence presented at trial. Neither sympathy nor prejudice should influence your decision." The prosecutor's remarks were made in the context of encouraging the jury to follow the law and to avoid deciding the issues based on emotion. Under these circumstances, we cannot say that the prosecutor's comments constituted plain error. *See People v. Williams, supra.*

## D.

We also reject defendant's contention that the prosecutor improperly appealed to the jurors to trust the credibility of the prosecution and its interpretation of the evidence.

It is improper for a prosecutor to express a personal opinion as to the veracity of a witness or to refer to his or her honesty or integrity as a public official. *People v. Williams, supra.*

Here, the prosecutor argued that a ten-second interval did not support defendant's theory of acting out of fear and that the two

fatal gunshot wounds were inflicted while the victim was lying on the floor. Defense counsel countered by stating, "there is absolutely no evidence to support [the prosecutor's] theory," and suggested that the two fatal shots were fired while defendant was standing up and the victim was moving towards her.

During rebuttal, the prosecutor responded: [Defense counsel] says that ... the prosecution is just going so far that we are just essentially making up stuff just to convict [defendant]. I'm not making up evidence. The evidence speaks for itself. You guys can judge. You're intelligent people. The prosecution is not going to lie about what happened that night.

■ We agree with defendant that the prosecutor's remarks improperly suggested that the jurors should trust the prosecution's judgment rather than their own interpretation of the evidence. However, defendant did not object to these remarks, and under the circumstances, this isolated statement does not rise to the level of plain error. *See People v. Williams, supra.*

### E.

Additionally, defendant contends that the cumulative prejudicial effect of the prosecutorial misconduct seriously undermined the fundamental fairness of defendant's trial and requires reversal. We disagree.

■ Where individual errors do not show the absence of a fair trial, reversal is not required. *People v. Dore,* 997 P.2d 1214, 1223 (Colo.App.1999).

■ While one of the prosecutor's comments was improper, we cannot say that this remark so undermined the fundamental fairness of the trial that it warrants reversal of defendant's conviction. *See People v. Dore, supra.*

### III.

■ Finally, defendant contends the trial court erred in concluding that second degree murder committed in the heat of passion is subject to crime of violence sentencing under § 16–11–309, C.R.S.2001, and is an extraordinary risk offense under § 18–1–105(9.7),

C.R.S.2001. Defendant argues that both the plain language and the history of amendments to § 18–3–103(4) indicate that the General Assembly did not intend for persons convicted of second degree murder committed in the heat of passion to be sentenced in accordance with § 16–11–309. We disagree.

The crime of murder in the second degree is defined in § 18–3–103, C.R.S.2001, which provides in relevant part:

(1) A person commits the crime of murder in the second degree if the person knowingly causes the death of a person. .

. . . .

(3)(a) Except as otherwise provided in paragraph (b) of this subsection (3), murder in the second degree is a class 2 felony.

(b) ... [M]urder in the second degree is a class 3 felony where the act causing the death was performed upon a sudden heat of passion....

(4) A defendant convicted pursuant to subsection (1) of this section shall be sentenced by the court in accordance with the provisions of section 16–11–309, C.R.S.

Section 16–11–309 provides that a person convicted of a crime of violence shall be sentenced to a term of incarceration of at least the midpoint in the presumptive range, but not more than twice the maximum term.

■ The presumptive range for a class three felony is between four and twelve years imprisonment. *See* § 18–1–105(1)(a)(V)(A), C.R.S.2001. However, under § 18–1–105(9.7), the presumptive range for a class three felony is increased to between four and sixteen years when the felony is a crime of violence. Therefore, a class three felony that is also a crime of violence requires a sentence in the range of ten to thirty-two years imprisonment. *See* § 16–11–309.

Here, the trial court found that defendant was convicted of a crime of violence and sentenced her to twenty-two years imprisonment. This sentence is supported by a recent decision by a division of this court concluding that second degree murder is a per se crime of violence, even if committed in the heat of passion. *See People v. Martinez,* 32 P.3d 582, 584 (Colo.App.2001).

In *Martinez*, after examining both the statutory language and the history of the 1996 amendments to § 18–3–103, the division concluded that the elements that must be established to prove the commission of the single offense of second degree murder are set forth in § 18–3–103(1), and the penalty provisions for the offense are set forth in § 18–3–103(3) and (4). Therefore, a defendant convicted of second degree murder committed in the heat of passion has been convicted pursuant to § 18–3–103(1). *People v. Martinez, supra; see also People v. Farbes*, 973 P.2d 704 (Colo.App.1998)(finding first degree assault committed under the heat of passion was subject to crime of violence sentencing under a similarly worded statute).

We find the reasoning in *Martinez* persuasive and applicable to the present case. Although defendant compares language of a prior statute providing that "a defendant convicted pursuant to this section" and the language of the present statute providing "pursuant to subsection (1) of this section," that comparison does not persuade us that *Martinez* was wrongly decided.

Citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), defendant nevertheless contends that the *Martinez* division erred in concluding that the absence of heat of passion is not an "element" of second degree murder. Defendant asserts that under *Apprendi*, the absence of heat of passion is an element of second degree murder because it is a fact that, if proved by the prosecution beyond a reasonable doubt, enhances the penalty for the offense. Therefore, according to defendant, the "elements" of second degree murder committed in the heat of passion are set forth both in subsection (1) and subsection (3) of § 18–3–103. We disagree.

The Supreme Court in *Apprendi* held that any fact that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2363–64, 147 L.Ed.2d at 455.

We note that here the issue of lack of provocation was submitted to the jury for determination by proof beyond a reasonable doubt. Therefore, the concerns raised in *Apprendi* about the need to have such issues decided by a jury rather than a judge are not present here.

■ Further, contrary to defendant's assertion, heat of passion is a sentence mitigating factor, the presence of which serves to *reduce* the felony level of second degree murder from a class two to a class three felony, rather than a separate offense. *People v. Garcia*, 28 P.3d 340 (Colo.2001); *People v. Lee*, 30 P.3d 686 (Colo.App.2000).

Consequently, defendant was sentenced within the appropriate range. *See People v. Martinez, supra.*

The judgment and sentence are affirmed.

Judge TAUBMAN and Judge VOGT concur.