**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**THIRTY–THREE THOUSAND TWO HUNDRED AND TWELVE DOLLARS ($33,212.00) in U.S. Currency, Ricardo Hernandez, Rosa E. Hernandez, Manuella Hernandez, Esmeralda Villela, and Enrique Rodriguez, Defendants–Appellants.**

No. 02CA2381.

Colorado Court of Appeals,
Div. I.

Dec. 18, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

Mary T. Keenen, District Attorney, George A. Codding, Deputy District Attorney, Adrian A. Van Nice, Deputy District Attorney, Boulder, Colorado, for Plaintiff–Appellee.

Goff & Goff, LLC, Lance J. Goff, Boulder, Colorado, for Defendants–Appellants.

Opinion by Judge LOEB.

Defendants, Ricardo Hernandez, Rosa E. Hernandez, Manuella Hernandez, Esmeralda Villela, and Enrique Rodriguez, appeal the trial court's order granting forfeiture to the People of $23,153 in currency seized from the home of defendant Ricardo Hernandez (Hernandez). We affirm.

Hernandez was arrested for possession and distribution of cocaine after making multiple sales to an undercover police officer. The drug sales and the arrest occurred several miles from Hernandez's home. At the site of the arrest, the police confiscated $5,000 in currency and more cocaine from Hernandez and his automobile. Also at the time of the arrest, police obtained Hernandez's consent to search his home, and they conducted the search that same day. They did not recover any drugs or drug paraphernalia from the home. However, Hernandez's wife, defendant Rosa Hernandez, opened a safe for the police, and the police confiscated $29,212 in currency from the safe. The currency was packaged in multiple bundles: $1,440 was wrapped in a credit union receipt; $4,619 was bundled in an envelope and labeled with Hernandez's brother's name; $4,000 was in a small envelope and wrapped in a credit union envelope; $1,077 was in a credit union envelope; $776 was bound in a rubber band; and $17,300 was in a vinyl folder.

Police cross-referenced the serial numbers on the confiscated currency from the safe

with the serial numbers on currency provided by police for the drug sales, and none of the serial numbers matched.

Approximately two months after the seizure, a police officer placed all of the currency found in the safe in a bag and used a drug detection dog to detect whether the odor of controlled substances was on the currency. The test was positive.

The People brought this civil proceeding seeking forfeiture of the currency found in the safe. The trial court conducted a hearing and determined that $23,153 seized from the safe was forfeitable. The court found that the remaining currency was not forfeitable because $4,619 belonged to Hernandez's brother and $1,440 was traceable to a casino win by Hernandez.

At the forfeiture trial, the People presented evidence that Hernandez had sold drugs to an undercover agent on multiple occasions and that he admitted he owned the currency, the safe in which it was found, and the house that was searched. The police officer who conducted the dog-sniff test also testified for the People. The People did not provide any evidence of a specific connection between the currency found in the safe and a drug sale by Hernandez, but rather relied on a statutory presumption of a substantial connection between the currency and the drug transactions and attempted to prove the negative, by showing a lack of a legitimate source of the currency.

Defendants did not contest that Hernandez had engaged in a public nuisance, but argued that the currency was not forfeitable. Defendants presented testimony attempting to show a legitimate source of the currency, but the People argued that the evidence was inconclusive or incredible. The trial court found that the People had established a rebuttable presumption of forfeiture and that defendants failed to rebut that presumption.

Defendants contend that the court erred in finding a rebuttable presumption of forfeiture under the applicable version of § 16–13–303(6). We disagree.

Section 16–13–303(3)(a)–(c), C.R.S.2003, provides, inter alia, that currency is deemed a public nuisance and is subject to forfeiture if it is "furnished or intended to be furnished by any person in exchange for any public nuisance act," is "proceeds traceable to any public nuisance act," or is "used or intended to be used to facilitate any public nuisance act."

At the time of the acts of public nuisance here, § 16–13–303(6) provided a rebuttable presumption of forfeiture for currency with a "substantial connection" to certain drug-related public nuisance acts:

Whenever the evidence adduced in an action pursuant to this part 3 shows a substantial connection between currency and the acts specified in [§ 16–13–303(1)(c)(I) ], a rebuttable presumption shall arise that said currency is property subject to forfeiture. A substantial connection exists if:

(a) Currency in the aggregate amount of one thousand dollars or more was seized at or close to the time that evidence of the [specified acts] was developed or recovered; and

(b)(I) Said amount of currency was seized on the same premises or in the same vehicle where evidence of said acts was developed or recovered; or

(II) Said amount of currency was seized from the possession or control of a person engaged in such acts; or

(III) Traces of a controlled substance were discovered on the currency or an animal trained in the olfactory detection of controlled substances indicated the presence of the odor of a controlled substance on the currency as testified to by an expert witness.

Colo. Sess. Laws 1987, ch. 122, § 16–13–303(6) at 633; cf. § 16–13–303(6), C.R.S.2003 (effective July 1, 2003, substantial connection must be shown by "clear and convincing evidence").

The People bear the burden of proving forfeitability under former § 16–13–303 by a preponderance of the evidence. See § 13–25–127(1), C.R.S.2003; People v. Milton, 732 P.2d 1199, 1207 (Colo.1987).

Thus, § 16–13–303(6) provides for a rebuttable presumption of forfeitability when the People first prove that currency of at least $1,000 was seized at or close to the time that

evidence of certain drug-related public nuisance acts was developed or recovered, § 16–13–303(6)(a), and then prove one of three specific circumstances that show a substantial connection between the currency seized and the public nuisance. *See* § 16–13–303(6)(b)(I)–(III). When the People make this showing, the burden shifts to the defendant to rebut the presumption by showing that the currency was not connected to the public nuisance. *See* § 16–13–303(6.5), C.R.S.2003 (provision added July 1, 2003, clarifying burden shifting and burdens of proof); *Fail v. Cmty. Hosp.*, 946 P.2d 573, 577 (Colo.App.1997)(where common law rebuttable presumption is involved, presumption shifts burden to other party to rebut the prima facie case).

Here, there is no dispute that the People satisfied their burden under § 16–13–303(6)(a). The issue is whether the People established a substantial connection and a rebuttable presumption under § 16–13–303(6)(b)(II) by showing that the currency was seized from the possession or control of a person engaged in drug-related acts of public nuisance. The crux of the debate between the parties here is what constitutes "possession or control" and, specifically, what kind of physical proximity to the currency, if any, is required.

Defendants argue that "possession or control" means that the currency must be found on the defendant's person. The People argue that the currency may be under the defendant's "control," even if that currency is seized far from the site of the public nuisance itself. According to the People, because Hernandez admitted that the currency belonged to him, and because the currency was in his safe at his house, the currency was under his "possession or control" under the plain meaning of those words. We agree with the People.

■ While we defer to the trial court's findings of fact, whether the People met their burden of proof and whether the evidence was sufficient to support a finding of forfeiture are matters we review de novo. *See Jagow v. E–470 Pub. Highway Auth.*, 49 P.3d 1151, 1158 (Colo.2002). The interpretation of a statute is also a question of law

subject to de novo review. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000).

■ Our fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. *Martin v. People*, 27 P.3d 846, 851 (Colo.2001). To accomplish this objective, we must begin with the plain language of the statute. If the statute is unambiguous and does not conflict with other statutory provisions, do we need look no further. Only if the language of the statute is ambiguous or in conflict with other provisions, do we then look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of the statute. *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002).

■ We presume that the General Assembly intended the entire statute to be effective and intended a just and reasonable result. And we must read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. *Charnes v. Boom*, 766 P.2d 665, 667 (Colo. 1988).

■ As a matter of public policy, forfeitures are generally not favored in the law; they may be enforced only when accomplished within the letter and spirit of the law. *People v. Cerrone*, 780 P.2d 562 (Colo.App. 1989); *Walker v. City of Denver*, 720 P.2d 619 (Colo.App.1986).

The term "possession or control" is not defined in the statute, and the interpretation of that term in this context is an issue of first impression in Colorado.

■ The statute specifies that the currency must be seized from the possession *or* control of a person engaged in certain drug-related acts constituting a public nuisance. Possession is defined as "hav[ing] in one's actual control," or "[t]he fact of having or holding property in one's power; the exercise of dominion over property." *Black's Law Dictionary* 1183 (rev. 7th ed.1999). Possession is also "the act or condition of having in or taking in one's control or holding at one's disposal ... actual physical control or occu-

pancy of property." *Webster's Third New International Dictionary* 1770 (rev. ed.1986).

The commonly understood meaning of "possession" thus encompasses both ownership and control. It is not clear from these definitions whether possession requires physical proximity. *Cf. People v. Chavez*, 182 Colo. 216, 219, 511 P.2d 883, 884 (1973)(where illegal drugs are found in defendant's vehicle and in his pocket, possession may be established by showing that the drugs were discovered in a place that is under the defendant's dominion and control); *People v. Williams*, 996 P.2d 237, 242 (Colo. App.1999)(the term "possess," when used in a statute defining possession of a controlled substance, means "actual control, care and management" of the drug; a defendant possesses a controlled substance when he or she knows of the substance's presence, the substance is immediately accessible, and the defendant exercises dominion and control over it).

However, "control" is defined in part as "the power or authority to manage, direct, or oversee." *Black's Law Dictionary* 330 (rev. 7th ed.1999), and as "the power or authority to guide or manage," "to exercise restraining or directing influence over," or "to have power over." *Webster's Third New International Dictionary* 496 (rev. ed.1986). Thus, "control" does not require an immediate physical relationship to the object, but instead involves an individual's power to affect the object or its use.

■ Under its plain meaning, therefore, the word "control" in the statute encompasses any currency that is legally the property of the defendant, as well as any currency that the defendant has the authority or the power to manage or direct, even if such currency is not in the defendant's actual physical possession when it is seized. *See Michael v. John Hancock Mut. Life Ins. Co.*, 138 Colo. 450, 454, 334 P.2d 1090, 1093 (1959)(possession or control under C.R.C.P. 34, includes "documents which are obtainable by the order or direction of the litigant"). The plain language of the statute, therefore, reveals the General Assembly's intention that any currency seized from the control of a defendant who engaged in a drug-related public nuisance is presumptively forfeitable.

Contrary to defendants' argument, the word "control," as it is commonly understood, is not limited by physical proximity or physical possession, and nothing in the statute indicates a legislative intention to limit "possession or control" in this way.

Moreover, we disagree with defendants that this interpretation of the plain language in § 16–13–303(6)(b)(II) renders the rebuttable presumption set forth in § 16–13–303(6)(b)(I) superfluous. Section 16–13–303(6)(b)(I), on the one hand, provides for a rebuttable presumption where the currency is seized on the same premises or in the same vehicle where evidence of the public nuisance acts was developed or recovered. Contrary to defendants' argument, that subsection does not require that the defendant own the premises or vehicle. Section 16–13–303(6)(b)(II), on the other hand, is intended to cover circumstances where the currency is seized from the possession or control of the person who actually committed the acts of public nuisance, regardless of the location of the seizure itself.

Defendants further argue that control or even simple ownership of currency is not enough to establish a substantial connection between the currency and the public nuisance act and that the inference creating the statutory presumption is only shown when the currency is found in physical proximity to a defendant.

■ However, given the plain meaning of the word "control," the General Assembly clearly intended a broader interpretation. The statute provides that a substantial connection to the public nuisance exists when currency is seized from the possession or control of a person engaged in drug-related acts constituting a public nuisance. Moreover, this statutory presumption only exists for currency connected to drug-related acts of public nuisance, and not for other types of personal property. Thus, the General Assembly's intent was that where at least $1,000 in currency (unlike other property) is seized from the possession or control of a person who, like defendant Hernandez, engaged in a public nuisance by distributing

controlled substances, the existence of the currency is suspect and is presumptively substantially connected to the public nuisance itself. *See Pediatric Neurosurgery, P.C. v. Russell,* 44 P.3d 1063, 1068 (Colo.2002)(if plain language clearly expresses legislative intent, then court must give effect to ordinary meaning of statutory language; court should avoid interpreting statute in way that defeats obvious intent of legislature); *Schenck v. Minolta Office Sys., Inc.,* 802 P.2d 1131, 1133 (Colo.App.1990)("Presumptions are rules of convenience, based on experience or public policy, so certain in their character that when they are established by the presentation of certain underlying facts the effect is to create a prima facie case upon which judgment may be rendered in the absence of contrary evidence.").

Defendants' reliance on *People v. McBeath,* 709 P.2d 38 (Colo.App.1985), is misplaced. That case did not involve the seizure or forfeiture of currency and, in any event, was decided before the statutory provisions at issue here were enacted.

Here, because the currency was in Hernandez's safe in his house, he had "control" over the currency. Despite his physical location at the time of the seizure, Hernandez had the power to direct or manage the currency. The People were therefore entitled to a rebuttable presumption of forfeiture under § 16–13–303(6)(b)(II), and the burden shifted to defendants to provide an alternative explanation for the source of the currency.

The trial court concluded that defendants' explanation for the source of the currency was not credible, and we find support for that conclusion in the record. We will not disturb a trial court's findings based on a determination of the credibility of witnesses. *See Page v. Clark,* 197 Colo. 306, 313, 592 P.2d 792, 796 (1979)(resolution of issues requiring determination of credibility of witnesses and weight to be given their testimony is sole responsibility of trial court and may not be reversed on appeal if there is record support for findings).

Because we conclude that forfeiture was proper under § 16–13–303(6)(b)(II), we need not consider defendants' alternative contention that the trial court also erred in finding a rebuttable presumption under § 16–13–303(6)(b)(III).

Judgment affirmed.

Chief Judge DAVIDSON and Judge DAILEY concur.